UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MAHALA AULT, STACIE RHEA, DAN WALLACE, for themselves and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) | Case No. 6:07-cv-1785-ORL-31KRS |
| v. ) ) | Jury Trial Demanded |
| WALT DISNEY WORLD CO., ) ) | |
| Defendant. ) | |

# COMPLAINT

Now Come the Plaintiffs, Mahala Ault [hereafter "Ault"], Stacie Rhea [hereafter "Rhea"], Dan Wallace [hereafter "Wallace"][from time to time Ault, Rhea and Wallace are collectively referred to as "Plaintiffs"], by themselves and on behalf of all others who are similarly situated, by and through their attorneys, and in support of their complaint against the Walt Disney World Co. [hereafter sometimes referred to as "Disney"], state as follows:

### NATURE OF COMPLAINT

1. Plaintiffs bring this suit, both individually and on behalf of all others who are similarly situated, against the Walt Disney World Co.. This suit is brought pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. § 12182, *et. seq.* [hereafter the "ADA"]. In this suit the Plaintiffs seek injunctive relief that would mandate that the Walt Disney World Co. modify certain policies it has in place at its four Walt Disney World Resort theme parks located within the judicial confines of the Middle District of

Florida.

2.  In 1990 the United States Congress made findings regarding physically disabled persons, finding that laws were needed to more fully protect "some 43 million Americans [with] one or more physical or mental disabilities"; that "historically society has tended to isolate and segregate individuals with disabilities"; and that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous . . . . . " 42 U.S.C. § 12101.

3.  Title III of the ADA establishes the general rule that:

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182(a).

The ADA goes on to define "discrimination" to include:

> a failure to make reasonable modifications in policies practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of

such goods, services, facilities, privileges, advantages or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii).

The regulations promulgated by the United States Department of Justice provide:

> Participation in unequal benefit. A public accommodation shall not afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 28 C.F.R. § 36.202(b).

## JURISDICTION AND VENUE

4. This lawsuit is brought under the ADA and, as such, constitutes a federal question giving this Court jurisdiction under 28 U.S.C. § 1331. Venue is appropriate because the defendant, the Walt Disney World Co., engages in business activities within the judicial confines of this District.

## PARTIES

5. Ault is a disabled resident of the State of Illinois. Ault brings this suit on her own behalf and on behalf of all of those who are similarly situated.

6. Rhea is a disabled adult resident of the State of Iowa. Rhea brings this suit on her own behalf and on behalf of all of those who are similarly situated.

7. Wallace is a disabled adult resident of the State of Illinois. Wallace brings this suit on his own behalf and on behalf of all of those who are similarly situated.

8. The Walt Disney World Co. is a corporation incorporated in the State of Florida. The Walt Disney World Co. owns and operates the Walt Disney World

Resort located within the judicial confines of the Middle District of Florida.

9.  The Walt Disney World Resort contains four separate theme parks, The Magic Kingdom, Epcot, Disney-MGM Studios and Disney's Animal Kingdom. The four theme parks require a public accommodation as that term is defined by the ADA. 42 U.S.C. § 12181(7)(I).

## ALLEGATIONS

**The Segway**

10.  The Segway PT [hereafter "Segway"] is a two-wheeled, self balancing transportation device. It is available in various models and is manufactured and distributed by Segway, Inc. The name "Segway PT" stands for "Segway Personal Transporter."

11.  While the Segway was not initially marketed to individuals who have disabilities, it is estimated that somewhere between 4,000 and 7,000 individuals who have mobility related disabilities rely upon a Segway to enhance their mobility. This group includes individuals who suffer from multiple sclerosis, arthritis, COPD, amputees, spinal injuries, Parkinsons, and ALS (Lou Gehrig's Disease), etc. In fact, there are a growing number of disabled Iraq war veterans who are relying upon the Segway to enhance their mobility.

**Walt Disney World Co. Policies**

12.  The Walt Disney World Co. prohibits the usage of a Segway at The Magic Kingdom, Epcot, Disney-MGM Studios and Disney's Animal Kingdom by the

general public. This ban provides no exception for those who utilize a Segway to provide mobility assistance because of a disability.

13. When Plaintiffs travel to the Walt Disney World Resort the policy of the four theme parks is to not allow them to utilize their Segway to assist them in navigating their way around the parks.

14. The Walt Disney World Co. policy of prohibiting the usage of the Segway at the four theme parks violates Title III of the ADA in that it has the effect of denying full access and enjoyment of the parks to those disabled individuals, like Plaintiffs, who rely upon the Segway for their mobility.

**Facts Pertaining to Ault**

15. Ault is thirty-three years old and suffers from Multiple Sclerosis.

16. As a result of her multiple sclerosis, Ault's physical mobility is very limited. Ault utilizes a Segway as her mobility device. Ault does not own a wheelchair or scooter.

17. Ault is planning a family vacation to Walt Disney World in December, 2007. After booking the vacation, Ault and her husband learned that Disney prohibits the use of the Segway at all Disney theme parks.

18. Ault's husband has spoken with representatives from Disney who have advised him that Ault will not be allowed to use her Segway at any Disney park.

19. Due to the fact that Ault will not be allowed to utilize her Segway at any of the four Disney theme parks she will not be able to fully enjoy the parks.

**Facts Pertaining to Rhea**

20. Rhea suffers from Amyotrophic Lateral Sclerosis ["ALS" or "Lou Gehrig's Disease"].

21. Rhea's ALS greatly limits her mobility and does not allow her to walk more than very short distances without the assistance of a mobility device.

22. Rhea relies upon a Segway as her mobility device. She does not own a wheelchair or scooter.

23. Rhea has two young children ages three and five. Rhea's children do not know that their mother suffers from a serious disease. Rhea's usage of a Segway, as opposed, to a wheelchair allows her family to enjoy their daily activities as normally as possible under the circumstances.

24. In September, 2007 Rhea, her husband, her children and their extended family went on a trip to Disney World.

25. Despite the requests made by Rhea's husband and attorney, Disney would not allow Rhea to utilize her Segway at any of its theme parks. Rhea did not want her children to see her relying upon a wheelchair for her mobility. As a result, Rhea was only able to take in a very small portion of the Disney theme parks.

26. Rhea was not able to fully enjoy the Parks on a September 2007 visit and will not be able to do so during any future visit if the current policy is in place.

**Facts Pertaining to Wallace**

27. On October 6, 1999 Wallace was severely injured when he was involved in an accident with a train in Staunton, Illinois. As a result of that accident Wallace lost his left foot.

28. As a result of Wallace's accident described above, he is no longer capable of walking distances in excess of one block. His prosthetic device allows him to walk short distances, however, he is not able to walk more than one block.

29. When Wallace visits any of the Four theme parks outlined above his disability would prevent him from walking around the parks.

30. As an aid to assist his mobility Wallace has purchased a Segway PT.

31. Wallace relies solely upon his Segway as a mobility device. Wallace does not own any other device [wheelchair, scooter, etc.] to assist him with his mobility.

32. Wallace intends to travel, in the near future, with his fiancé and children to the Walt Disney World Resort in Florida. Wallace wants to visit The Magic Kingdom, Epcot, Disney-MGM Studios and Disney's Animal Kingdom with his fiance and children.

33. Due to the fact that Wallace will not be allowed to utilize his Segway at any of the four Disney theme parks he will not be able to fully enjoy the parks.

**Facts Pertaining to all Plaintiffs**

34. Given the current policies in place at the Walt Disney World Resort, a disabled individual's only option would be to rent a motorized scooter or a wheelchair.

Page 7 of 12

The cost of motorized scooters is $35.00 per day. Given that the daily admission price for an adult to one of the theme parks is $67.00 per day, forcing a disabled individual to rent a motorized scooter increases his costs by more than 50% over a person who does not suffer from a mobility related disability. Similarly, additional cost are incurred in renting a wheelchair.

35. Scooter and wheelchair rentals are not available in the parking lots. For a disabled person with mobility problems, it is a long walk from the parking areas to the place where scooters and wheelchairs are rented. There would be no such walking requirement if the disabled person was allowed to bring the Segway into the Resort.

36. Renting a scooter or wheelchair will not provide the same access to all Resorts and their use is more dangerous for the disabled individual , as that individual will not have as good of a visual field from a seated position as opposed to a standing position.

37. Disney has furnished Segways for use of its employees who, upon information and belief, are not disabled with mobility problems.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs are bringing this action on behalf of themselves and, under Federal Rules of Civil Procedure 23(a) and 23(b), as the representative of the following class of individuals:

> Those individuals who: (1) suffer from a mobility disability; (2) who rely upon a Segway PT for assistance with their mobility; and (3) who have or who intend to visit The Magic

Kingdom, Epcot, Disney-MGM Studios and/or Disney's Animal Kingdom.

39. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the Federal Rules of Civil Procedure 23(a) and 23(b).

40. Plaintiffs do not know the exact size of this proposed class. It is estimated that approximately 4,000 to 7,000 disabled American citizens rely upon the Segway PT for assistance with their mobility. Given the popularity of the four theme parks [an estimated 16.2 million people visited the Magic Kingdom in 2005 alone] it is estimated that at least ten percent of these disabled individuals would like to visit at least one of the four theme parks in the next ten years. As such, Plaintiffs believe that this potential class is in excess of fifty (50) individuals and is dispersed geographically and that, as a result, joinder in this action is impracticable.

41. The facts alleged by the Plaintiffs are substantially similar to those of other potential class members.

42. The legal issues surrounding Plaintiffs' claims are, in all relevant respects, identical to those of other potential class members. In this respect the issue is whether the policy of the Walt Disney World Co. prohibiting the usage of Segway PT's by disabled individuals violates the ADA. Further, the relief sought by the Plaintiffs is injunctive and would apply to all named and unnamed class members equally.

43. The foregoing questions of law and fact predominate over any questions affecting only individual class members.

44. Ault, Rhea and Wallace will fairly and adequately protect class members' interests and have no interests which are antagonistic to those of other class members. Ault, Rhea and Wallace have retained counsel who are experienced in federal litigation including claims brought under the ADA.

45. That this class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.

WHEREFORE, Ault, Rhea and Wallace, on behalf of themselves, and on behalf of all similarly situated individuals, respectfully request that this Court certify the class and thereafter enter judgment in their favor and in favor of the class and against the Walt Disney World Co., and provide the following relief:

A. A declaration that the policies of the Walt Disney World Co. that prohibit the use of Segway PT's for disabled individuals violates Title III of the ADA.

B. A permanent injunction direction the Walt Disney World Co. to modify its policies pertaining to the use of Segway PT's by disabled patrons;

C. Aware any other declaratory and injunctive relief the Court deems appropriate;

D. Retain jurisdiction over this matter until such time as the Court is satisfied that the policy that Ault, Rhea and Wallace complain of has been rectified; and

E. Award Ault, Rhea and Wallace all of their costs and expenses in maintaining this suit as well as all reasonable attorney fees incurred by them in bringing this action.

MAHALA AULT, STACIE RHEA and DAN WALLACE

*/s/ Bernard H. Dempsey, Jr.*
One of Their Attorneys

Bernard H. Dempsey, Jr.
Florida Bar No. 0107697
Nancy A. Johnson
Florida Bar No. 0597562
Dempsey & Associates, P.A.
1560 Orange Avenue, Suite 200
Winter Park, Florida 32789
Telephone: (407) 422-5166
Facsimile: (407) 422-8556
E-mail: bhd@dempsey-law.com
naj@dempsey-law.com

John A. Baker[1]
J. Phillip Krajewski
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois 62701
Telephone: (217) 522-3445
Facsimile: (217) 522-8234
E-mail: johnbakerlaw@sbcglobal.net
jpklaw@sbcglobal.net

---

[1] Plaintiffs are in the process of preparing their Motions to Appear Pro Hac Vice and Consents to Designation for all out-of-state counsel.

Jason M. Medley
O'Donnell, Ferebee, Medley & Keiser, P.C.
450 Gears Road, 8th Floor
Houston, Texas 77067
Telephone:      (281) 875-8200
Facsimile:      (281) 875-4962
E-mail:         jmedley@ofmklaw.com