## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MAHALA AULT, STACIE RHEA, DAN   )
WALLACE, for themselves and                )
on behalf of all others similarly situated, )
                                                             )
              Plaintiff,                           )
                                                             )
        v.                                               )        Case No.        07-cv-1785
WALT DISNEY WORLD CO.,                )
                                                             )
              Defendant.                         )

### FIRST AMENDED COMPLAINT

NOW COME the Plaintiffs, Mahala Ault [hereafter "Ault"], Stacie Rhea [hereafter "Rhea"],

Dan Wallace [hereafter "Wallace"][from time to time Ault, Rhea and Wallace are collectively

referred to as "Plaintiffs"], by themselves and on behalf of all others who are similarly situated,

by and through their attorneys, and in support of their complaint against the Walt Disney World

Co. [hereafter sometimes referred to as "Disney"], state as follows:

### NATURE OF COMPLAINT

1.      Plaintiffs bring this suit, both individually and on behalf of all others who

are similarly situated, against the Walt Disney World Co.. This suit is brought pursuant to Title

III of the Americans With Disabilities Act, 42 U.S.C. § 12182, *et. seq.* [hereafter the "ADA"]. In

this suit the Plaintiffs seek injunctive relief that would mandate that the Walt Disney World Co.

modify certain policies it has in place at its four Walt Disney World Resort theme parks located

within the judicial confines of the Middle District of Florida.

2.      In 1990 the United States Congress made findings regarding physically

disabled persons, finding that laws were needed to more fully protect "some 43 million

Americans [with] one or more physical or mental disabilities"; that "historically society has tended to isolate and segregate individuals with disabilities"; and that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous . . . . . " 42 U.S.C. § 12101.

       3.     Title III of the ADA establishes the general rule that:

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182(a).

The ADA goes on to define "discrimination" to include:

> a failure to make reasonable modifications in policies practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii).

The regulations promulgated by the United States Department of Justice provide:

> Participation in unequal benefit. A public accommodation shall not afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the

2

opportunity to participate in or benefit from a good, service,
facility, privilege, advantage, or accommodation that is not equal to
that afforded to other individuals.  28 C.F.R. § 36.202(b).

## JURISDICTION AND VENUE

4.      This lawsuit is brought under the ADA and, as such, constitutes a federal

question giving this Court jurisdiction under 28 U.S.C. § 1331.  Venue is appropriate because the

defendant, the Walt Disney World Co., engages in business activities within the judicial confines

of this District.

## PARTIES

5.      Ault is a disabled resident of the State of Illinois.  Ault brings this suit

on her own behalf and on behalf of all of those who are similarly situated.

6.      Rhea is a disabled adult resident of the State of Iowa.  Rhea brings this

suit on her own behalf and on behalf of all of those who are similarly situated.

7.      Wallace is a disabled adult resident of the State of Illinois.  Wallace brings

this suit on his own behalf and on behalf of all of those who are similarly situated.

8.      The Walt Disney World Co. is a corporation incorporated in the

State of Florida.  The Walt Disney World Co. owns and operates the Walt Disney World Resort

located within the judicial confines of the Middle District of Florida.

9.      The Walt Disney World Resort contains four separate theme parks:  The

Magic Kingdom, Epcot, Disney-MGM Studios and Disney's Animal Kingdom.  The four theme

parks constitute a public accommodation as that term is defined by the ADA.  42 U.S.C. §

12181(7)(I).

3

10.     The Walt Disney World Co. provides transportation services for

individuals who visit its theme parks.    Disney acknowledges that "[t]here are many modes of

transportation within the Walt Disney World Resort, including Bus, Boat and Monorail." As

such, Disney is obligated to follow the regulations of the United States Department of

Transportation pertaining to the ADA.  28 C.F.R § 36.310.

**ALLEGATIONS**

**The Segway**

11.     The Segway PT [hereafter "Segway"] is a two-wheeled, self balancing

transportation device.  It is available in various models and is manufactured and distributed by

Segway, Inc.  The name "Segway PT" stands for "Segway Personal Transporter."

12.     Studies have concluded that the Segway is as safe, or safer, than a

motorized scooter or motorized wheelchair when used in densely traveled areas.  The United

States Department of Transportation, acting pursuant to its regulatory obligations under the

ADA, has concluded that:

> when a [Segway] is being used as a mobility device by a person
> with a mobility-related disability, then the transportation
> provider must permit the person and his or her device onto
> the vehicle. This is analogous to the situation in which a
> transportation provider that has a general policy that does
> not permit pets to enter, but must permit a person with a
> disability to bring a service animal into a vehicle.[1]

The Department of Transportation further concluded that "a Segway occupies a legal position

---

[1]  This interpretive guideline of the DOT was written to interpret its own ADA
regulations.  *See* 49 C.F.R. § 37, *et. seq*.

4

analogous to canes, walkers, etc."

13.     While the Segway was not initially marketed to individuals who have

disabilities, it is estimated that somewhere between 4,000 and 7,000 individuals who have

mobility related disabilities rely upon a Segway to enhance their mobility.  This group includes

individuals who suffer from multiple sclerosis, arthritis, COPD, amputees, spinal injuries,

Parkinsons, and ALS (Lou Gehrig's Disease), etc.  In fact, there are a growing number of

disabled Iraq war veterans who are relying upon the Segway to enhance their mobility.  A not-

for-profit organization has already donated Segways to approximately 30 Unites States veterans

who were injured in either Iraq or Afghanistan.

**Walt Disney World Co. Policies**

14.     The Walt Disney World Co. prohibits the usage of a Segway at The

Magic Kingdom, Epcot, Disney-MGM Studios and Disney's Animal Kingdom by the general

public.  This ban provides no exception for those who utilize a Segway to provide mobility

assistance because of a disability.

15.     The Walt Disney World Co. also refuses to allow its visitors to use

Segways on their various transportation systems.  There is no exception for disabled individuals

who rely upon a Segway for their mobility.

16.     The Walt Disney World Co. policies regarding the usage of Segways by

disabled individuals has been well publicized and is known by each of the plaintiffs.

17.     When Plaintiffs travel to the Walt Disney World Resort the policy of the

four theme parks is to not allow them to utilize their Segway to assist them in navigating their

5

way around the parks.

18.     The Walt Disney World Co. policy of prohibiting the usage of the

Segway at the four theme parks and on its transportation systems violates Title III of the ADA in

that it has the effect of denying full access and enjoyment of the parks to those disabled

individuals, like Plaintiffs, who rely upon the Segway for their mobility.

**Facts Pertaining to Ault**

19.     Ault is thirty-three years old and suffers from Multiple Sclerosis.

20.     As a result of her multiple sclerosis, Ault's physical mobility is very

limited. Ault utilizes a Segway as her mobility device. Ault does not own a wheelchair or

scooter.

21.     Ault visited Walt Disney World in December, 2007. After booking the

vacation, Ault and her husband learned that Disney prohibits the use of the Segway at all Disney

theme parks.

22.     Ault's husband spoke with representatives from Disney who

advised him that Ault would not be allowed to use her Segway at any Disney park.

23.     During her visit to Disney World Ault was prohibited from utilizing

her Segway. Instead, Ault was forced to use a motorized wheelchair that caused severe

inconvenience and physical pain that she would not have had to endure but for the denial of the

use of her Segway.

24.     Ault and her husband have very close personal friends who reside in the

Orlando area. When they visit Disney they stay with their friends who have invited them to

6

return. Ault and her husband have four children who all tremendously enjoy the Disney parks
and intend to return frequently.

25.     The Aults currently intend to return to the Disney theme parks in either
late August or early September, 2008.

26.     Due to the fact that Ault will not be allowed to utilize her Segway at
any of the four Disney theme parks she will not be able to fully enjoy the parks during her future
visits.

**Facts Pertaining to Rhea**

27.     Rhea suffers from Amyotrophic Lateral Sclerosis ["ALS" or "Lou Gehrig's
Disease"].

28.     Rhea's ALS greatly limits her mobility and does not allow her to walk
more than very short distances without the assistance of a mobility device.

29.     Rhea relies upon a Segway as her mobility device.  She does not own a
wheelchair or scooter.

30.     Rhea has two young children ages three and five.  Rhea's children do not
know that their mother suffers from a serious disease. Rhea's usage of a Segway, as opposed to a
wheelchair, allows her family to enjoy their daily activities as normally as possible under the
circumstances.

31.     In September, 2007 Rhea, her husband, her children and their extended
family went on a trip to Disney World.

32.     Despite the requests made by Rhea's husband and attorney, Disney would

7

not allow Rhea to utilize her Segway at any of its theme parks. Rhea did not want her children to see her relying upon a wheelchair for her mobility. As a result, Rhea was only able to take in a very small portion of the Disney theme parks.

33.     Rhea was not able to fully enjoy the theme parks on a September 2007 visit and will not be able to do so during any future visit if the current policy is in place.

34.     When Rhea travelled to Disney in September of 2007 she did so with her husband and children. Her mother-in-law arranged and financed the trip. The trip was scheduled around a business meeting she had scheduled in the Orlando, Florida area.

35.     Rhea's mother-in-law is scheduled to attend another business trip in February of 2009. She is going to bring Rhea and her family again and they again will visit the Disney theme parks.

**Facts Pertaining to Wallace**

36.     On October 6, 1999 Wallace was severely injured when he was involved in an accident with a train in Staunton, Illinois. As a result of that accident Wallace lost his left foot.

37.     As a result of Wallace's accident described above, he is no longer capable of walking distances in excess of one block. His prosthetic device allows him to walk short distances, however, he is not able to walk more than one block.

38.     When Wallace visits any of the Four theme parks outlined above his disability would prevent him from walking around the parks.

39.     As an aid to assist his mobility Wallace has purchased a Segway PT.

8

40.     Wallace relies solely upon his Segway as a mobility device.  Wallace does
not own any other device [wheelchair, scooter, etc.] to assist him with his mobility.

41.     For some period of time Wallace and his fiancé have been planning on
traveling to the Disney theme arks.  They have inquired into the specifics of such vacations for
some years.

42.      Wallace has purchased tickets to visit Orlando and visit Disney from
September 24, 2008 through October 1, 2008.  This time is around the birthdays of his two
children.  On September 6, 2008 his daughter will be seven years old and on September 14, 2008
his son will be twelve years old.  During this vacation Wallace will visit The Magic Kingdom,
Epcot, Disney-MGM Studios and Disney's Animal Kingdom with his fiance and children.

43.     Due to the fact that Wallace will not be allowed to utilize his Segway at
any of the four Disney theme parks he will not be able to fully enjoy the parks unless the policy
changes and allows him to bring his Segway into the parks during this vacation.

**Facts Pertaining to all Plaintiffs**

44.     Given the current policies in place at the Walt Disney World Resort, a
disabled individual's only option would be to rent a motorized scooter or a wheelchair.  The cost
of motorized scooters is approximately $35.00 per day.  Given that the daily admission price for
an adult to one of the theme parks is $67.00 per day, forcing a disabled individual to rent a
motorized scooter increases his costs by more than 50% over a person who does not suffer from a
mobility related disability.  Similarly, additional cost are incurred in renting a wheelchair.

45.     Scooter and wheelchair rentals are not available in the parking lots.  For a

9

disabled person with mobility problems, it is a long walk from the parking areas to the place

where scooters and wheelchairs are rented.  There would be no such walking requirement if the

disabled person was allowed to bring the Segway into the Resort.

46.     Renting a scooter or wheelchair will not provide the same access to all

Resorts and their use is, in many respects, more dangerous for the disabled individual, as that

individual will not have as good of a visual field from a seated position as opposed to a standing

position.

47.     Disney has furnished Segways for use of its employees who, upon

information and belief, are not disabled with mobility problems.

48.     Disney also allows individuals to rent Segways at some of its parks for

certain tours.

CLASS ACTION ALLEGATIONS

49.     Plaintiffs are bringing this action on behalf of themselves and, under

Federal Rules of Civil Procedure 23(a) and 23(b), as the representative of the following class of

individuals:

>           Those individuals who: (1) suffer from a mobility disability; (2)
>           who rely upon a Segway PT for assistance with their mobility; and
>           (3) who have or who intend to visit The Magic Kingdom, Epcot,
>           Disney-MGM Studios and/or Disney's Animal Kingdom.

50.     This action satisfies the numerosity, commonality, typicality,

adequacy, predominance and superiority requirements of the Federal Rules of Civil Procedure

23(a) and 23(b).

51.     Plaintiffs do not know the exact size of this proposed class.  It is

10

estimated that approximately 4,000 to 7,000 disabled American citizens rely upon the Segway PT

for assistance with their mobility. Given the popularity of the four theme parks [an estimated

16.2 million people visited the Magic Kingdom in 2005 alone] it is estimated that at least ten

percent of these disabled individuals would like to visit at least one of the four theme parks in the

next ten years. As such, Plaintiffs believe that this potential class is in excess of fifty (50)

individuals and is dispersed geographically and that, as a result, joinder in this action is

impracticable.

52.     The facts alleged by the Plaintiffs are substantially similar to those of other

potential class members.

53.     The legal issues surrounding Plaintiffs' claims are, in all relevant respects,

identical to those of other potential class members. In this respect the issue is whether the policy

of the Walt Disney World Co. prohibiting the usage of Segway PT's at its theme parks and on its

transportation systems by disabled individuals violates the ADA. Further, the relief sought by

the Plaintiffs is injunctive and would apply to all named and unnamed class members equally.

54.     The foregoing questions of law and fact predominate over any questions

affecting only individual class members.

55.     Ault, Rhea and Wallace will fairly and adequately protect class members'

interests and have no interests which are antagonistic to those of other class members. Ault,

Rhea and Wallace have retained counsel who are experienced in federal litigation including

claims brought under the ADA.

56.     That this class action is superior to the alternatives, if any, for the fair and

11

efficient adjudication of this controversy.

WHEREFORE, Ault, Rhea and Wallace, on behalf of themselves, and on behalf of all similarly situated individuals, respectfully request that this Court certify the class and thereafter enter judgment in their favor and in favor of the class and against the Walt Disney World Co., and provide the following relief:

     A.     A declaration that the policies of the Walt Disney World Co. that prohibit the use of Segway PT's for disabled individuals violates Title III of the ADA.

     B.     A permanent injunction direction the Walt Disney World Co. to modify its policies pertaining to the use of Segway PT's on its transportation systems and at its theme parks by disabled patrons who rely upon a Segway for mobility;

     C.     Aware any other declaratory and injunctive relief the Court deems appropriate;

     D.     Retain jurisdiction over this matter until such time as the Court is satisfied that the policy that Ault, Rhea and Wallace complain of has been rectified; and

     E.     Award Ault, Rhea and Wallace all of their costs and expenses in maintaining this suit as well as all reasonable attorney fees incurred by them in bringing this action.

MAHALA AULT, STACIE RHEA and DAN WALLACE

 /s/ Bernard H. Dempsey, Jr.
        One of Their Attorneys

Bernard H. Dempsey, Jr.
Dempsey & Associates, P.A.
1560 Orange Avenue, Suite 200
Winter Park, FL  32789
Telephone:              (407) 422-5166
Facsimile:              (407) 422-8556
E-mail:                 bhd@dempsey-law.com


John A. Baker
J. Phillip Krajewksi
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois 62701
Telephone:              (217) 522-3445
Facsimile:              (217) 522-8234
E-mail:                 johnbakerlaw@sbcglobal.net
                        jpklaw@sbcglobal.net


Jason M. Medley
O'Donnell, Ferebee, Medley & Keiser, P.C.
450 Gears Road, 8th Floor
Houston, Texas 77067
Telephone:              (281) 875-8200
Facsimile:              (281) 875-4962
E-mail:                 jmedley@ofmklaw.com

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via

Electronic Delivery via the CM/ECF System on this 1st day of April, 2008, and was therefore

provided by electronic means to counsel.

Mahala Ault, Stacie Rhea and Dan Wallace

s/Bernard H. Dempsey, Jr.
One of Their Attorneys

14