UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MAHALA AULT, STACIE RHEA and DAN WALLACE, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No.: 6:07-CV-1785-GAP-KRS |
| WALT DISNEY WORLD CO., | ) ) ) |
| Defendant. | ) |

**JOINT MOTION FOR CONDITIONAL CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF
JOINT STIPULATION OF SETTLEMENT AND RELEASE**

Under Rules 23(a), 23(b) and 23(e) of the Federal Rules of Civil Procedure, plaintiffs Mahala Ault, Stacie Rhea and Dan Wallace, individually and on behalf of all others similarly situated, and defendant Walt Disney World Co. ("Worldco") hereby move this Court for conditional class certification and preliminary approval of a settlement resolving all claims in the above-captioned matter. The parties have executed a Joint Stipulation of Settlement and Release memorializing the terms of their agreement, which is attached hereto as Exhibit 1 ("Settlement Agreement"), and an Agreed Motion for Leave to Amend Plaintiffs' First Amended Complaint to Add Class Allegations being filed simultaneously herewith.

After protracted arms-length negotiations by experienced counsel, the parties in this case have reached a settlement that resolves all issues between them with the exception of attorneys' fees for one of the three law firms representing plaintiffs. For purposes of this settlement only, the parties have also stipulated to conditionally certify the class defined in Plaintiffs' Second Amended Complaint. This settlement class meets all the necessary

requirements under Rule 23(a) and Rule 23(b)(2) and should be certified by the Court, and the Settlement Agreement is eminently fair, reasonable and adequate. Accordingly, the Court should grant the instant motion.

## BACKGROUND

On November 9, 2007, Mahala Ault, Stacie Rhea and Dan Wallace, residents of Illinois and Iowa who have mobility impairments, filed a Complaint alleging that Worldco prohibits all guests from using Segways in the theme parks at Worldco's Walt Disney World Resort ("WDW") in violation of Title III of the Americans With Disabilities Act ("ADA"). Doc. 1, Complaint. Plaintiffs alleged they were bringing the case on behalf of a class of individuals who (1) "suffer from a mobility disability; (2) who rely on a Segway PT for assistance with their mobility; and (3) who have or who intend to visit" one or more of the theme parks at WDW, *id*. at ¶ 38, and they sought an injunction directing Worldco to permit the use of Segways in its theme parks and on its transportation systems. Segways are two-wheeled, gyroscopically-balanced transportation devices. Worldco prohibits guest use of two-wheeled vehicles inside WDW and Disneyland Resort ("Disneyland"), no matter the type or usage, and therefore guests are prohibited from using Segways within Worldco's properties.[1]

On January 22, 2008, Worldco filed a motion to dismiss the Complaint for failure to state a claim upon which relief can be granted and for lack of subject-matter jurisdiction. Doc. 20. The Court dismissed the Complaint on February 20, 2008, finding that plaintiffs lacked standing to obtain injunctive relief but granting plaintiffs leave to file an amended complaint.

---

[1] There is one limited circumstance that is in the nature of a theme park attraction or service rather than mobility aid. As part of its display of innovative products at Epcot, Worldco offers a limited number of guests the opportunity to experience riding a Segway in the form of a strictly supervised closed course in the early morning before most guests have arrived in
(continued...)

2

Doc. 41, Order. On March 5, 2008, plaintiffs moved to supplement the original Complaint regarding standing (Doc. 44). The Court granted this motion and on April 1, 2008, plaintiffs amended their Complaint. Doc. 49, Plaintiffs' First Amended Complaint.

As will be demonstrated below, this action has been vigorously prosecuted and defended. The parties engaged in extensive motion practice and substantial class discovery, including the exchange of documents and interrogatory answers, subpoenas to non-parties, and several all-day depositions. Nearing the conclusion of class discovery, the parties began to assess the possibility of settling and commenced a series of confidential discussions. These led to communications by Worldco with mobility device manufacturers and discussions among design and safety professionals about technology, modification, and customization of a new and different mobility device for use in a standing position. Worldco then caused the design, construction and testing of a prototype device which would offer the benefits allegedly provided by a Segway while meeting Worldco's concern for the safety of all its many thousands of daily guests. As a result of this negotiation and innovation the parties entered into the Settlement Agreement.[2]

The terms of the settlement are set forth in detail in the Settlement Agreement that is attached hereto as Exhibit 1. Specifically, the settlement provides alternate access to WDW in Florida and Disneyland in California (together, the "Disney Resorts"). That is, as part of this Settlement Agreement, Worldco has agreed to acquire at least 15 of the newly designed electric

---

the park. Each person on the tour must first complete an instruction and training course on the Segway. Worldco maintains these Segways, which have a special speed limiting device.

[2] Notwithstanding the terms of this Settlement Agreement, Worldco denies any and all liability to the named plaintiffs and the class they represent, and denies that it has violated Title III of the ADA in any respect.

stand-up vehicles ("ESVs") for use at the Disney Resorts by persons with a mobility impairment or disability. This ESV is intended to replicate in dimension, purpose and operation a common wheelchair or motorized scooter while allowing individuals with a mobility impairment or disability to stand upright instead of sitting down. The ESV would be rented to guests who claim to have a mobility impairment or disability and need to use a stand-up mobility device. The ESVs will be rented on the same terms as sit-down electric vehicles. Plaintiffs have agreed that the new ESV satisfies their claims to the benefits which a Segway allegedly provides and consequently that Worldco may continue to prohibit all guests from using two-wheeled vehicles including Segways within the Disney Resorts.

The Settlement Agreement also provides a monetary payment to the named plaintiffs that will allow them to stay at WDW with their families for a week with complimentary use of the new ESV.

Finally, Worldco has reached an agreement with two of the three plaintiffs as to an appropriate amount of attorneys' fees and costs that they may request of the Court. Specifically, John A. Baker and J. Phillip Krajewski, counsel for Dan Wallace, have represented that their unbilled attorneys' fees and costs in the case exceed $200,000, but they have agreed that $55,000 is a reasonable amount to request in light of the result achieved and other factors. Jason Medley, counsel for Stacie Rhea, has represented that his fees and costs in the case exceed $30,000, but he has agreed that $15,000 is a reasonable amount to request as his attorneys' fees and costs. Worldco has agreed that it will not oppose a request from Mr. Baker's firm or Mr. Medley's firm for attorneys' fees and costs of up to $55,000 and $15,000, respectively. However, Bernard H. Dempsey, Jr., counsel for Mahala Ault, has not reached an agreement with Worldco and he will file a separate motion for attorneys' fees and costs in which he will allow

Worldco ample time, with the Court's consent, to oppose his motion.  In furtherance of resolving these attorneys' fees requests, the parties propose that the Court set the following briefing schedule:  plaintiffs' motions due 30 days from the issuance of the order granting preliminary approval of the settlement, and Worldco's responses thereto due 30 days after the filing of plaintiffs' motions.

## ARGUMENT

**I.      THE COURT SHOULD CERTIFY THE CLASS SOLELY FOR PURPOSES OF SETTLEMENT**

The parties are seeking to conditionally certify the class solely for purposes of settlement.  "A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'"  *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1319 (S.D. Fla. 2007); *see also In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 178 (5th Cir. 1979) (holding that "a tentative or temporary settlement class was proper").[3]  Because this Court has not yet ruled on class certification, conditional class certification of a settlement class is proper.

In their First Amended Complaint, plaintiffs alleged that they were bringing the case on behalf of a class of individuals who "(1) suffer from a mobility disability; (2) who rely on a Segway PT for assistance with their mobility; and (3) who have or who intend to visit" one or more of the theme parks at WDW.  Doc. 49, First Amended Complaint ¶ 49.  For purposes of settling this case, however, the plaintiffs are moving to amend the proposed class definition to clearly include both of Worldco's theme park resort properties, WDW and Disneyland.  Courts have routinely allowed the scope of claims in a case to be broadened by amending the complaint

at the time of settlement. *See, e.g.*, *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1316 (S.D. Fla. 2005) (recognizing that amending the complaint to broaden the scope of the claims is proper "in an effort to cover everything and insure that the settlement will in fact result in an end to litigation") (citation omitted); *Access Now, Inc. v. Cunard Line Ltd., Co.*, No. 00-7233, slip op. (S.D.Fla. June 11, 2001) (granting motion to amend), 2001 U.S. Dist. LEXIS 21481 (S.D.Fla. Oct. 31, 2001) (approving settlement). Thus, the settlement class consists of "those individuals who: (1) suffer from a mobility disability; (2) rely upon a Segway or substantially similar stand-up mobility device for assistance with their mobility; and (3) intend to visit the Walt Disney World Resort or the Disneyland Resort."

To certify a class for settlement purposes under Federal Rule of Civil Procedure 23(e), the Settlement Class must satisfy the requirements of Rules 23(a) and 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622 (1997); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000). Because plaintiffs' Settlement Class satisfies the requirements under Federal Rules of Civil Procedure 23(a) and 23(b)(2), class certification is appropriate.[4]

### A.   Rule 23(a) Standards Are Satisfied

In order to maintain a class action under Rule 23(a), the following four prerequisites must be met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of

---

[3] The Eleventh Circuit has adopted as binding precedent the rulings of the old Fifth Circuit handed down prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[4] As class members may not opt out of the settlement of a class action for injunctive and declaratory relief only, notice of class certification and an opportunity to opt out are not required. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 n. 14 (1974) (stating that the notice requirements under Rule 23(c)(2) are "inapplicable to class actions for injunctive or declaratory relief maintained under subdivision (b)(2)"); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1554 (11th Cir. 1986) ("The general rule in this Circuit is that absent members of (b)(2) classes have no automatic right to opt out of a lawsuit and to prosecute an entirely separate action.").

representation. *See Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).  As set forth below, the Settlement Class satisfies all four requirements.

### 1. Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires plaintiffs to prove that the proposed class is so numerous that joinder would be impracticable.  Fed. R. Civ. P. 23(a)(1).  While there is no fixed number, the Eleventh Circuit has explained that "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."  *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).  Plaintiffs have identified twenty-five individuals whose emails indicate that they would likely be included in the Settlement Class.  Doc. 66, Exhibit 1.  Given the bi-coastal expansiveness of the Settlement Class, the Court can readily conclude that the Settlement Class is so numerous that joinder of all individual class members would be impracticable.

Other factors bearing on the numerosity requirement include the geographic diversity and financial resources of class members as well as their ability to institute and maintain individual actions.  *Access Now, Inc. v. Ambulatory Surgery Ctr. Group, Ltd.*, 197 F.R.D. 522, 525 (S.D. Fla. 2000).  In the instant case, where the place of public accommodation is a vacation destination and the requested relief is injunctive in nature, it is expected that the class members would be geographically dispersed and would not have the resources or access to counsel willing to take a non-monetary case.  Accordingly, the parties have demonstrated that the Settlement Class satisfies the numerosity and impracticability requirements of Rule 23(a).

### 2. Commonality

The commonality requirement is met if there are questions of law and fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Not every question of law or fact needs to be

common to all members of the class. *See Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). In fact, the commonality requirement is satisfied when the claims of both the named plaintiffs and putative class members arise from the same event, pattern or practice and are based on the same legal theory. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Here, the named plaintiffs have alleged discriminatory practices in violation of the ADA that comprise a "common nucleus of operative facts," which supports class certification. *Access Now, Inc. v. AHM CGH, Inc.*, No. 98-3004, 2000 U.S. Dist. LEXIS 14788, at *5 (S.D. Fla. July 12, 2000); *see also Access Now, Inc.*, 197 F.R.D. at 524 (finding that the alleged existence of allegedly discriminatory practices satisfies the commonality requirement). Thus, the Settlement Class meets the requirements of Rule 23(a)(2).

### 3. Typicality

The typicality requirement is met if the claims of the named representatives are typical of the claims of the class as a whole. Fed. R. Civ. P. 23(a)(3). This requirement ensures that the named plaintiffs possess the same interests and suffer the same injury as the potential class members. *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004). Even if some factual differences exist, a strong similarity of legal theories will establish typicality. *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). Plaintiffs' claims are typical of the claims of the putative members of the Settlement Class. First, like the named plaintiffs, each potential Settlement Class member is an individual who: (1) suffers from a mobility disability; (2) relies upon a Segway or substantially similar stand-up mobility device for assistance with their mobility; and (3) intends to visit the Walt Disney World Resort or the Disneyland Resort. Second, the named plaintiffs and putative Settlement Class members claim that Worldco prohibits all guests from using Segways in its resorts in violation of Title III of the ADA. Third, the requested declaratory and injunctive relief sought by plaintiffs, if granted, would benefit not

just the named plaintiffs, but also all of the settlement class members. Thus, the claims of the named plaintiffs clearly satisfy the typicality requirements of Rule 23(a)(3).

### 4. Adequacy of Representation

The final threshold requirement for class certification under Rule 23(a) is adequacy of representation. Fed. R. Civ. P. 23(a)(4). The adequacy prerequisite "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.*, 521 U.S. at 625 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-158 n. 13 (1982)). In assessing the adequacy of representation, courts examine: (1) whether the lead plaintiffs have interests in common with, and not antagonistic to, the interests of the class; and (2) whether plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). In this case, the named plaintiffs have protected the interests of the entire class in that all class members will be able to benefit from the relief provided in the Settlement Agreement. There is also no existing conflict that could hinder the named plaintiffs' ability to pursue this case vigorously on behalf of the class. Therefore, the named plaintiffs will fairly and adequately protect the interests of the Settlement Class.

Furthermore, the adequacy of counsel requirement can be met by showing that plaintiffs' counsel is qualified, experienced and generally able to conduct the litigation. Counsel for the plaintiffs have put forth evidence that they have experience in handling complex civil litigations of this nature, and lead counsel for the Settlement Class, John Baker, has demonstrated considerable skill in helping to reach the instant compromise. Because adequacy of representation is usually presumed in the absence of evidence to the contrary, the requirements of Rule 23(a)(4) are met with respect to the Settlement Class. *See Access Now, Inc.*, 2000 U.S. Dist. LEXIS 14788, at *5.

B.  **Rule 23(b)(2) Standards Are Satisfied**

In addition to satisfying the requirements of Rule 23(a), the Settlement Class must be certifiable under Rule 23(b). *Amchem*, 521 U.S. at 614. Plaintiffs seek only injunctive and declaratory relief in alleging violations of Title III of the ADA. When plaintiffs seek injunctive relief, they must satisfy the requirements under Rule 23(b)(2) by demonstrating that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Moore v. Am. Fed. of Television & Radio Artists*, 216 F.3d 1236, 1241 (11th Cir. 2000). This is exactly the kind of case for which certification under Rule 23(b)(2) is appropriate. *See Access Now, Inc.*, 2000 U.S. Dist. LEXIS 14788, at *5 (holding that a case seeking exclusively injunctive relief for alleged noncompliance with Title III of the ADA "fits squarely within the ambit of cases for which Rule 23(b)(2) was created"). Thus, certification of the Settlement Class is proper under Rule 23(b)(2).

II.  **THE SETTLEMENT AGREEMENT SHOULD BE APPROVED BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE**

Federal Rule of Civil Procedure 23(e) conditions settlement of any class action on court approval. *Amchem*, 521 U.S. at 617. A class action settlement should be approved if it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In determining whether the settlement is fair, adequate and reasonable, the Court must consider all relevant factors, including "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Id*. As

discussed in more detail below, the Settlement Agreement is fair, adequate, and reasonable, and is not the product of collusion. Accordingly, the Court should approve it.

      A.      **<u>Likelihood of Success at Trial</u>**

To establish a violation of the ADA's reasonable modification provision, 42 U.S.C. § 12182(b)(2)(A)(ii), plaintiffs must prove that the requested modification is "necessary to afford access" to defendant's facilities. *See, e.g.*, *PGA Tour, Inc. v. Martin*, 532 U.S. at 688. Plaintiffs face significant obstacles to prevailing at trial in light of case law establishing that individuals with disabilities are not entitled to their choice of accommodation. Here, plaintiffs all testified that they are physically able to sit in a wheelchair or scooter. Specifically, Dan Wallace works out of his home, where he typically sits at his computer "all day." He used a wheelchair for approximately 6 months prior to purchasing a Segway, which he prefers because people ask questions without thinking "anything is wrong with you . . . They think it's neat." *See* Doc. 72, Exhibit 1, Deposition of Dan Wallace at 11, 13, 16 and 21. Mahala Ault visited the four theme parks at WDW and spent "most of the day" and some evenings as well viewing different parts of WDW, all with a three-wheeled motorized scooter. Doc. 72, Exhibit 6, Deposition of Mahala Ault at 96. Stacie Rhea actually walked the first two days of her vacation at WDW; on the third day, she rented a motorized scooter for a couple of hours. *See* Doc. 72, Exhibit 7, Deposition of Stacie Rhea at 68, 80. Therefore, plaintiffs may not be able to prove that it is "beyond their capacity" to access WDW using a wheelchair or motorized scooter, and the Court could find that the Segway is simply a device plaintiffs *prefer* to use, and at that, only sometimes.

Furthermore, plaintiffs would have to prove that their requested modification of Worldco's exclusion of two-wheeled vehicles does not fundamentally alter the nature of goods, services, facilities, privileges, advantages or accommodations at WDW and does not pose a

11

direct threat to the health or safety of others.  During his Rule 30(b)(6) deposition, Worldco's chief safety officer testified that he was personally involved in the original design and testing of the Segway, is extremely knowledgeable about Segways and how they perform in different conditions, and decided with others at Worldco not to allow guests to use the device because of the safety risks Segways would pose to other guests in that environment.

Given Worldco's numerous defenses, the risk that plaintiffs may not prevail at trial is significant.  While plaintiffs recognize the risks associated with going forward, they also believe in the viability of their claims and they state that they brought this case to serve the goals of independence and dignity for persons with disabilities.  All parties agree with those goals and believe that this settlement is superior to the cost of continued litigation.  In comparison with the inherent risk and uncertainty of litigating this case, the Settlement Agreement provides certain, substantial and immediate benefits to the Settlement Class.

### B. Range of Possible Recovery

In determining the fairness of a settlement agreement, "[t]he settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  Plaintiffs seek exclusively declaratory and injunctive relief under Fed. R. Civ. P. 23(a), 23(b)(2) and the ADA.  Plaintiffs' range of possible recovery spans from a finding of non-liability to being granted declaratory and injunctive relief which would prevent Worldco from prohibiting all guests from using Segways and other two-wheeled vehicles.

### C. The Point On or Below the Range of Possible Recovery At Which A Settlement Is Fair, Adequate and Reasonable

As part of this Settlement Agreement, Worldco has agreed to acquire no less than 15 new ESVs for use by persons with a mobility impairment or disability at the Disney Resorts.

The ESVs would only be rented to guests with a mobility impairment or disability who need a stand-up device. The plaintiffs agree that the ESV satisfies their claims to the benefits a Segway allegedly provides. The Settlement Agreement also provides the named plaintiffs with a monetary recovery with which they can stay at WDW for a week with their families, and with complimentary use of a new ESV. Finally, the Settlement Agreement provides a total of up to $70,000 to two of the three firms representing the plaintiffs.[5]

The relief in this Settlement Agreement does not require Worldco to allow its guests to use Segways, but provides substantial if not equivalent benefits to the plaintiffs and the class they represent, as demonstrated above. Therefore, the Settlement Agreement provides relief at the highest end of the range of possible recovery and therefore weighs heavily in favor of approval.

### D. Complexity, Expense and Duration of Litigation

The parties have spent a great deal of time and expense investigating and analyzing the factual and legal issues in this case. In fact, the attorneys' fees and costs incurred by plaintiffs' lead counsel, even before the class certification stage has been completed, attests to the complexity and expense of this case from their standpoint and Worldco invested much technical and developmental time and resources leading to the innovative solution reflected in the settlement. Absent settlement, this case will likely require a protracted trial and potential appeal involving considerable litigation risks, costs, and delays, with highly uncertain ultimate results, and plaintiffs would face significant risks in going forward given the defenses available

---

[5] The completeness of the settlement is dependent on the third firm's fee request, which Mr. Dempsey has not yet made.

to Worldco. In light of these inherent costs, risks and delays, the Settlement Agreement provides significant benefits to the Settlement Class.

### E. Substance and Amount of Opposition to Settlement

The parties do not anticipate any significant opposition to this settlement from the Settlement Class because it provides substantial benefits responsive to the claims asserted in this action.

### F. The Stage of Proceedings at Which the Settlement Was Achieved

The original complaint in this matter was filed on November 9, 2007, over a year ago. Since then, the parties have conducted extensive motions practice, substantial discovery, and multiple settlement negotiations of a very complex and technical nature. Specifically, plaintiffs had the opportunity to take the Rule 30(b)(6) deposition of Worldco's chief safety officer, Gregory Hale. Mr. Hale provided plaintiffs with a clear explanation of Worldco's justifications for prohibiting Segways at the Disney resorts. During the deposition, plaintiffs also learned that Worldco had given this issue a great deal of consideration and that Worldco's officials were extremely familiar with the design, development and operation of the Segway. Furthermore, plaintiffs were informed that Worldco gave a significant amount of thought in considering the safety risks involved in allowing Segways at the Disney resorts. As a result, counsel for plaintiffs were clearly in a position to evaluate the strengths and weaknesses of the named plaintiffs' claims and to conclude that the Settlement Agreement provides fair, reasonable and adequate relief. Because the parties have expended much effort in analyzing the issues in this case, this Court should find that the parties are at a proper juncture for settlement. *Bennett*, 737 F.2d at 986.

### G. The Judgment of Experienced Counsel for the Parties

In evaluating the *Bennett* factors, the Court must not try the case on the merits, but rather rely on the judgment of experienced counsel and, absent fraud, "should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330. Plaintiffs are represented by counsel experienced in handling complex civil litigation of this nature. Likewise, counsel for Worldco has substantial experience in class action litigation. Therefore, the judgment of these experienced counsel that the Settlement Agreement is a fair, reasonable and adequate resolution of this case weighs in favor of approval.

### H. The Settlement Is Not the Product of Collusion

This litigation has been hotly contested by all parties, as demonstrated by the numerous arguments raised by Worldco in two motions to dismiss, the efforts of the parties in conducting class discovery, and the extensive settlement-related discussions and projects since last June. Therefore, there is no reason to believe that the Settlement Agreement was the product of collusion; in fact it is based on arms-length negotiations by experienced and reputable counsel for both parties, and the negotiations lasted six months. *See Diaz v. Hillsborough County Hosp. Auth.*, No. 8:90-CV-120-T-25B, 2000 U.S. Dist. LEXIS 14061, at *15 (M.D. Fla. Aug. 7, 2000) (holding that "[t]he settlement is the result of hard-fought, adversarial, arm's length negotiation" because the litigation was hotly contested and the parties were involved in extensive settlement negotiations over a period of several months). Notably, two of the three plaintiffs and their counsel agreed to substantially reduce their attorneys' fees and costs, which further demonstrates that this settlement is not the product of collusion. Clearly, the absence of collusion in this case favors approval of the Settlement Agreement.

When considered together, all the *Bennett* factors support approval of the class action settlement under Rule 23(e). The settlement also ensures that there will be appropriate

notice to class members. At least 60 days prior to any hearing under Rule 23(e), the parties will send by mail or email the Notice of Class Action Settlement and Hearing[6] to each person known to counsel for any party in this case who claims to have a mobility impairment or disability and expressed an interest in bringing a Segway into the Disney Resorts. Counsel for both sides are in the process of completing a search of their records and estimate that there are approximately 50-60 known class members to whom notice will be sent.

The parties will also provide the same notice to two organizations, Disability Rights Advocates For Technology ("DRAFT") and Segs4Vets, which have promoted the use of Segways as mobility aids by individuals with disabilities and which have urged the elimination or modification of rules prohibiting the use of Segways in various places and facilities around the nation. Both organizations have broad national scope in reaching out to individuals with disabilities, have been widely covered by the news media and participate in projects that provide Segways to individuals throughout the country.

Providing notice to these individuals and organizations is the most effective way of reaching those interested persons on whose behalf this case was filed. This type of notice is "the best notice practicable under the circumstances" and will insure that the settlement receives full consideration before the Court makes its final determination. *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 125 (E.D. Pa. 2005).

---

[6] *See* Exhibit A to the Stipulation of Settlement, Notice of Class Action Settlement and Hearing.

## **CONCLUSION**

For all of the foregoing reasons, the Settlement Class should be conditionally certified for settlement purposes, and the Settlement Agreement should be given preliminary approval.

Dated:  December 26, 2008

s/Kerry Alan Scanlon
Kerry Alan Scanlon
Jeremy M. White
Kaye Scholer LLP
901 15th Street, NW
Washington, DC  20005
Phone:  (202) 682-3500
Fax:  (202) 682-3580
kscanlon@kayescholer.com
jewhite@kayescholer.com

s/Manuel Kushner
Manuel Kushner
Florida Bar Number: 330957
Kaye Scholer LLP
Phillips Point, West Tower
Suite 900
777 South Flagler Drive
West Palm Beach, FL 33401-6163
Phone:  (561) 802-3230
Fax:  (561) 802-3217
mkushner@kayescholer.com

Respectfully submitted,

s/John A. Baker
John A. Baker
Illinois Bar No. 6244334
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois  62701
Telephone:  (217) 522-3445
Facsimile:  (217) 522-8234
Email:  johnbakerlaw@sbcglobal.net

s/Bernard H. Dempsey, Jr.
Bernard H. Dempsey
Florida Bar No. 107697
Dempsey & Associates, P.A.
1560 Orange Avenue, Suite 200
Winter Park, Florida 32789
Telephone:  (407) 422-5166
Facsimile:  (407) 422-8556
Email:  bhd@dempsey-law.com

s/J. Phillip Krajewski
J. Phillip Krajewski
Illinois Bar No. 3122935
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois  62701
Telephone:  (217) 522-3445
Facsimile:  (217) 522-8234
Email:  jpklaw@sbcglobal.net

s/Jason M. Medley
Jason M. Medley
Texas Bar No. 24013153
O'Donnell, Ferebee, Medley & Keiser, P.C.
450 Gears Road, 8th Floor
Houston, Texas  77067

Telephone:  (281) 875-8200
Facsimile:  (281) 875-4962
Email:  jmedley@ofmklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all Counsel of Record.

>
> s/Jeremy M. White
> Jeremy M. White
> Kaye Scholer LLP
> 901 15th Street, NW
> Washington, DC 20005
> Phone: (202) 682-3500