**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DISABILITY RIGHTS ADVOCATES FOR**
**TECHNOLOGY, a Missouri Non-Profit Corp.;**
**DANIEL M. GADE; ALAN A. MACCINI;**
**JAMES F. OVERBY; and JERRY MILLER,**
on behalf of themselves and all others similarly situated,

        **Plaintiff-Intervenors**

**v.**                                                   **Case No. 6:07-CV-1785-ORL-KRS**

**WALT DISNEY WORLD CO.,**
**a Florida Corporation**

        **Defendant.**
_____

## MOTION TO INTERVENE

Plaintiff-Intervenors, Disability Rights Advocates for Technology ("DRAFT"), Major Daniel M. Gade ("Gade"), Alan A. Maccini ("Maccini"), James F. Overby ("Overby"), and Jerry Miller ("Miller") (sometimes collectively referred to hereinafter as "Plaintiff-Intervenors"), move this Honorable Court to grant intervention of right under Rule 24(a) and, in the alternative, permissive intervention, under Rule 24(b) of the Federal Rules of Civil Procedure. The Complaint in Intervention is attached hereto as **Exhibit A**. Plaintiff-Intervenors further request that their Complaint in Intervention be deemed filed upon granting this motion and that Defendant Walt Disney World Co. ("WorldCo" or "Defendant") be required to respond to the Complaint in Intervention within 20 days. In support of their motion, Plaintiff-Intervenors state as follows:

<u>**INTRODUCTION**</u>

**A. Intervention of Right**

1.      Plaintiff-Intervenors are entitled to intervene under Rule 24(a)(2) because 1) they claim an interest relating to the property or transaction that is the subject of the action,"; 2) they are "so situated that disposing of the action may as a practical matter impair or impede the movants' ability to protect its interest,"; and 3) existing parties do not adequately represent Plaintiff-Intervenors' interests.

2.      Plaintiff-Intervenors' claim precisely concerns the subject of this action, that is, WorldCo's ban on two-wheeled mobility devices, such as Segways. Disposing of this action, whether by settlement or by litigation, will impair and impede Plaintiff-Intervenors' ability to protect their interests; by definition, any injunction granted or denied will have a dispositive affect on Plaintiff-Intervenors' claim.

3.      The existing parties do not adequately represent Plaintiff-Intervenors' interests because they have conceded that the challenged ban may permanently remain in effect and agreed to other conditions which the proposed interveners believe are of questionable legality. If the settlement is not approved, it remains the case that the existing parties cannot represent Plaintiff-Intervenors for several reasons: a) unlike the original plaintiff class representatives, Plaintiff-Intervenors include or represent individuals who cannot, do not, or should not use wheelchairs, scooters, or WorldCo's newly invented device, b) unlike the original plaintiff class representatives, Plaintiff-Intervenors have extensive expertise and experience in the subject matter of this litigation, with a national scope and association with, and representation of, dozens of individuals who have submitted their material as objectors to

the settlement, c) unlike the original plaintiff class representatives, who were willing to accept a settlement-class only result which is the precise opposite of the relief they had sought in the case, Plaintiff-Intervenors are committed to a achieving a wholly different outcome.  They believe  that they are likely to prevail on their claim that the WorldCo ban is blatantly illegal and must be overturned under the ADA.

### B.  Permissive Intervention

4.      Plaintiff-Intervenors are entitled to intervene under Rule 24(b)(1)(B) because they have a "claim or defense that shares with the main action a common question of law or fact."

5.      The Americans with Disabilities Act claim before the Court concerns the legality of WorldCo's ban on the use of certain mobility devices. The important question of law shared by the main action and the Plaintiff-Intervenors' action is whether that ban is legal under the ADA. In addition, there are numerous questions of fact which are shared between the main action and Plaintiff-Intervenors' action, including the nature and characteristics of the Segway, the mobility needs served by such devices, the specific policies and practices of the Defendant, and the like.

### MEMORANDUM OF LAW IN SUPPORT

### I.      Background

The main action was filed by three individuals who alleged that WorldCo's policy forbidding the use of two-wheeled Segway mobility devices plainly violated the Americans

with Disabilities Act. No discovery on the merits has been conducted. Some limited discovery was conducted with regard to the class certification question.

On the eve of the end of the court-ordered abatement of the motion for class certification, and with what one of the main action's plaintiffs' counsel called a "gun to our heads" from a Disney "take it or leave it" settlement demand,[1] the plaintiffs in the main action acceded to a settlement, the terms of which significantly contradict the original demand for an end to WorldCo's Segway ban.

A "settlement only" class certification is pending as part of the Settlement Agreement and Release which the parties have submitted to the Court. That is, there is no settlement without the agreed class certification, and there is no certification without the rest of the settlement. In addition to a national right to perpetually maintain its ban on Segway-type devices, WorldCo also obtained in the agreement a) an expansion of the class to cover its California WorldCo resort properties, although none of the named plaintiffs in the main

---

[1] The manner in which the Settlement was reached raises serious questions on its fairness and adequacy. The Settlement was filed December 5, 2008. The day before, December 4, Orlando attorney Bernard H. Dempsey, Jr., one of Plaintiffs' counsel, wrote his co-counsel that, "I have still not seen any drafts of the settlement," (emphasis added), and that "I really regret that no one sent me anything since October 28, or informed me until yesterday of the status of discussions." December 4, 2008 Email from Mr. Dempsey, Ex. 2 to Ex. A of *Plaintiff Mahala Ault's Motion for Attorney's Fees and Costs* (Feb. 27, 2009) (Dkt. #93) ("Ault Motion"). As of earlier that week, Jason M. Medley, an attorney for Rhea, "was unaware of the status of any settlement negotiations." *Id.* Another Plaintiff's counsel wrote later that day that there had not been unprovided documents. John A. Baker December 4 email, Ex. 3 to Ex. A of *Ault Motion, supra.*

As of December 4, 2008, attorney's fees had been agreed upon between Disney and two of the Plaintiff law firms (not by Mr. Dempsey who would not negotiate fees because a settlement had not been reached). *See the two emails cited above,* and ¶80, at p. 24, of Mr. Dempsey's fee Affidavit to this Court ("I made absolutely clear to my co-counsel that only if and when the clients had expressed their unequivocal consent to the settlement terms, would I have a personal discussion with defense counsel relating to the subject of attorneys' fees").

Two days earlier, on December 2, 2008, Mr. Dempsey wrote to the other Plaintiffs' counsel regarding an expected, but not yet received, "non-economic" and "take it or leave it approach" from "Disney's lawyer," and asking them: "How in the world are we ever going to resolve this case satisfactorily with a gun to our heads?" December 2, 2008 email from Mr. Dempsey, at Ex. 1 to Ex. A to Ault Motion, *supra.*

action have standing to sue in California, and a California action was poised for summary judgment against Disneyland; and b) a very broad and improper release of existing and future class claims, whether state or federal, whether for damages or other relief. The settlement came along with a specified payment of two of the three plaintiff's attorney's fees, despite the efforts of their local counsel to de-link the fee issue from the merits, in light of important ethical concerns about simultaneous negotiation of the two.[2]

More than 100 objectors have protested the settlement.[3] The United States of America, as *amicus curiae*, submitted a detailed objection describing the manner in which the settlement is contrary to the ADA, and the serious difficulties approval would create in the United States' efforts to enforce the ADA.

## II.       The Intervenors Bring Expertise, a National Perspective and Commitment

Filing their own class complaint, the Plaintiff-Intervenors include a national non-profit body with special interest and expertise in the subject of the litigation. The individual interveners share the identical legal claim and many of the same factual issues.  They will bring a perspective which includes careful attention to the suit's original goals and to the special need of many people with disabilities to use their own mobility vehicle during their access to the Disney Orlando amusement park.

Plaintiff-Intervenors       include       Disability       Rights       Advocates       for       Technology

---

[2]  *See* preceding footnote.

[3]  Additional objections have been received by DRAFT after the March 12, 2009 deadline set by the Court. If and when permitted, these will be filed as well. Also, undersigned counsel were informed by Patrick McNamara that his timely filed objection (which is not reflected on the docket) has not been found by the Clerk. Mr. McNamara states that he served his objection on the parties' counsel as well.

("DRAFT"), the national organization to which the original plaintiff class representatives pointed the Court as having special expertise in the subject matter. DRAFT is a non-profit charitable organization, and brings this lawsuit on behalf of, and in the interests of its associated individuals who seek to use Segways as their own mobility devices during visits to Walt Disney World, but have sought to do so unsuccessfully due to the ban on such devices by Defendant. DRAFT represents people with disabilities who refuse to be defined by their disability and whose passionate enthusiasm for participating in life's activities is supported by Universal Design and new and emerging technologies. DRAFT has an additional organizational interest in this litigation as its disposition may impede specific charitable work in which DRAFT is engaged. Among the beneficiaries of the charitable work of DRAFT are hundreds of Iraq and Afghanistan United States military injured veterans to whom DRAFT has donated Segways to enable them to have reliable and dignified mobility devices. [4]

Plaintiff-Intervenors also include Daniel M. Gade, a United States Army Major with twelve years of commissioned service, including leadership in a variety of command positions and service in a number of staff positions. He is currently pursuing a Ph.D. in Public Administration at the University of Georgia with a Policy focus. After service in Korea, Major Gade was posted to Iraq as Commander of an Armor Regiment. On the afternoon of January 10, 2005, an Improvised Explosive Device (IED) detonated near his vehicle. Major Gade was severely injured and nearly died. This was his second injury in Iraq. During and after a year of treatment at Walter Reed Army Medical Center in Washington, DC., his life was saved and he received unprecedented and vigorous physical therapy and

---

[4] DRAFT has organizational standing to sue. *See Georgia v U.S. Army Corps of Engineers*, 302 F.3d 1242 (11th Cir. 2002).

rehabilitation. It was necessary to amputate Major Gade's right leg at the hip. Among other recognitions, Major Gade received two Purple Hearts from President Bush.

Major Gade was Associate Director of the White House Domestic Policy Council from June, 2007 to June 2008 where he was responsible for coordinating Veterans and Military Health Care policy, coordination of disability policy across numerous federal agencies, including SSA, HHS and DHS, and for outreach to veterans and disability groups, including outreach to the United States Congress and Veterans Service Organizations (VSOs).

Major Gade can stand indefinitely but he walks long distances (greater than two blocks) poorly. He has used a Segway since August 2005 at the White House (Segways are allowed in the Oval Office) and at the U.S. Capitol during his work for the President. He has used the Segway on the District of Columbia Metro subway system, Busch Gardens, the San Diego Zoo and other crowded locations.

During a family trip to Disney's Orlando properties in 2006, WorldCo informed Major Gade that he was not welcome at the Walt Disney World park in Florida. Major Gade was at a WorldCo resort hotel and was told that he would not be permitted to visit the Walt Disney World park the next day using his Segway. He was shocked. His daughter was crushed. Major Gade plans to visit Disney again. His prosthetic provider is in Orlando and, in addition to family trips, he would visit at least once a year, but would require that WorldCo policy change in order to do so.

The remaining Plaintiff-Intervenors, described below, are residents of Florida, all of whom rely on Segways, have rarely if ever used a wheelchair, and who are likely to visit the

Walt Disney World resort with family and friends in the near future once the ban is lifted.[5]

Jerry Miller is a former state trooper and a resident of Palm Harbor, Florida, approximately 2 hours from Walt Disney World. He has chronic pain due to a work-related vehicular accident and because of Parkinsons disease. Sitting causes his legs to stiffen and cramp. He has been using a Segway for six to seven years in numerous public places with his wife and family, including his twin three-year-old grandchildren. He wants to visit Disney World resort with his family.

James F. Overby is a Vietnam veteran with a disability who resides in Jacksonville Beach, Florida, approximately 2 1/2 hours from Disney World resort. He regularly relies upon a Segway because he has difficulty getting enough oxygen when he walks. Though his son's family lives in Colorado and his son will soon be deployed in Afghanistan, he wants to be able to visit Walt Disney World with them when they come to visit. He has used his Segway at Universal Studios, Orlando, without incident or interference.

Alan A. Maccini is a resident of Florida who lives approximately 2 1/2 hours from Disney World resort. Mr. Maccini became disabled in 2004 when a ruptured disc caused him incomplete paraplegia and numbness from his thighs through his feet. He has used a Segway for his disability since July of 2005. A former annual-pass holder at Walt Disney World, he would like to return to Disney World with family and friends when they visit from out of town, or just on his own. He has used his Segway at Universal Studios, Orlando, without incident or interference. Mr.Maccini is presently the vice president of Plaintiff-Intervenor

---

[5] Plaintiffs in the main case at the eleventh hour agreed to expand the case to obtain a settlement encompassing Disney's California parks, although they had no standing to sue in that regard. Plaintiff-Intervenors' Complaint in Intervention, and the relief sought, matches the scope of the original case and is limited to the Florida Disney parks. In addition to simplifying the standing issue, the Florida focus avoids interference with California or other litigation against Disney on the same or similar issues.

DRAFT.

### III.    Intervention of Right

Under Rule 24(a), class members can intervene as of right if they share the same claim as the plaintiffs in the main action, and if their interests are not adequately represented by existing parties. Typically, the burden of showing inadequate representation is "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538, n. 10 (1972) (rule's language that current class representation "may be" inadequate supports standard that the showing is "minimal"); *Calhoun v. Cook*, 487 F.2d 680, 683 (5th Cir. 1973). The rebuttable presumption of adequate representation, where Intervenors and existing parties share the same objectives "is weak." *Stone v. First Union Corp.,* 371 F.3d 1305 (11th Cir. 2004) (reversing district court's denial of intervention).

Under the pre-1966 Rule 24, the intervenor had the burden of showing inadequate representation. Under the change instituted in 1966, intervention is of right "unless existing parties adequately represent that interest." Rule 24(a)(2). With this shift in the burden away from the proposed Intervenors, the change in the rule intended that intervention be more freely available.[6] *Aids Healthcare Foundation, Inc. v. Orange County*, 2008 WL 5381855 (M.D. Fla., Dec. 23, 2008) ("The burden on the potential intervenor to demonstrate that existing parties cannot adequately represent its interests is 'treated as minimal.'" Citing *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999)); *Turn Key Gaming, Inc. v. Oglala*

---

[6]   Nuesse v. Camp, 385 F.2d 694 (D.C. Cir 1967) ("serious possibility" that absentee's interest "may not be adequately represented" satisfies the rule); *Catarino v. Barry*, 922 F.2d 37, 42, n. 4 (1st Cir. 1990).

*Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) (reversing denial of intervention) ("Rule 24 should be construed liberally, and doubts resolved in favor if the proposed intervenor.").

### A.  Plaintiff-Intervenors Are Not Adequately Represented

Intervention under Rule 24 would put before the Court class members who are not currently adequately represented, including those who prefer to use, or must use, their own mobility devices, or who cannot use wheelchairs or WorldCo's newly-invented device. Those interests are not represented at all right now.[7] The Advisory Committee Notes to Rule 24 explain:

> A class member who claims that his "representative" does not adequately represent him, and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which by its terms extends to him, and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack.  Rather he should, as a general rule, be entitled to intervene in the action.

Fed. R. Civ. P. 24, advisory committee notes.  Intervention can further assure typicality of claims, especially since, here, the plaintiffs in the main action were comfortable using wheelchairs or similar devices.[8] Intervention can also be helpful at trial or in formulating

---

[7]  *Roeder v. Islamic Republic of Iran,* 333 F.3d 228 (D.C. Cir.), *cert. den.*, 542 U.S. 915 (2003) (US entitled to intervene in former hostage suit against Iran where US interests were not represented at all in the case).

[8]  *Stone v. First Union Corp.,* 371 F.3d 1305, 1312 (11th Circ. 2004) (intervention permitted where "manner" in which rights may have been violated "might not be identical" to named class representatives):

> Although all of the plaintiffs allege to have been subject to the same plan of age discrimination, the manner in which they were discriminated against may not be identical. Thus, under Chiles, the plaintiffs are permitted to intervene to represent their interests where different than Stone's interests. For instance, the plaintiffs may wish to emphasize different aspects of First Union's employment policies. We hold that the difference in interests is sufficient to overcome the weak presumption of adequate representation.

*Stone*, 371 F.3d at 1312*; Cole v. Schenley Industries, Inc.,* 60 F.R.D. 81 (S.D. N.Y. 1973) (intervention by post-merger announcement stock seller was essential to maintain class action on behalf of such sellers where none of a subclass of named plaintiffs were in that group).

relief.[9]

There are several independent reasons for concluding that the Plaintiff-Intervenors' interests are not adequately represented by the current parties.

First, whether the Court approves or disapproves the settlement, it is undeniable that <u>none</u> of the existing parties are committed to the sole legal claim before the Court: that WorldCo's blanket ban on personal Segway devices violates the ADA. Fundamentally, the Plaintiff-Intervenors' interests, therefore, are not at all represented before the Court. Regardless of the result on the merits, the Plaintiff-Intervenors bring a commitment to analysis and resolution of that legal issue, one of tremendous personal and policy importance, and one in which, as the Court has seen, the United States itself has a vital interest. On this ground alone, movants have more than met the *Trbovich* and *Clark v. Putnam County* "minimal" standard

Second, the Settlement Agreement is itself an alert that vital interests are not represented. Intervention can be especially important when parties present what is called a "settlement-only" class certification. In language strikingly applicable here, the Supreme Court teaches that heightened scrutiny over class certification is needed in this situation:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial. But other specifications of the Rule-those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context. Such

---

[9] *Degregario v. O'Bannon*, 86 F.R.D. 109, 116 (E.D. Pa 1980) (allowing intervention "only as offering a welcome supplement to an already viable lawsuit"); *Groves v. Insurance Co. of North America*, 433 F.Supp. 877 (E.D. Pa. 1977) (in employment discrimination case, intervention of clerical level employee as intervenor, where named plaintiff was a professional level employee; difference in the positions might assist the court at trial or for purposes of relief);

> attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). As the Supreme Court warned in that decision, "proposed settlement classes sometimes warrant more, not less, caution on the question of certification." *Id.*

As the Court considers the intervention request, we urge it to keep in mind the *Amchen* concern. The plaintiffs in the main case are parties to a settlement-only class certification which waives not only their original demand for an end to the ban, but waives other important rights of the absent class members. That fact itself warrants a conclusion that the litigation would be well served by participation of the Plaintiff-Intervenors. Put more strongly and more accurately, the Plaintiff-Intervenors' interests are not adequately represented in the main action.

Third, the case at bar is a Rule 23(b)(2) class action, and the Plaintiff-Intervenors therefore cannot opt out, no matter how inadequately the parties in the main action represent their interests. Whether or not the case is settled, Plaintiff-Intervenors and, for DRAFT, the beneficiaries of its Seg4Vets program, will be bound. In 23(b)(2) cases, intervention will be granted for that reason alone.[10] Also, intervention avoids later attacks on the preclusive effect of a judgment.[11]

---

[10] *Woolen v. Surtran Taxicabs, Inc.* 684 F.2d 324 (5th Cir. 1982) (putative intervenors were antagonistic to the class representative and had sought to have class certification denied).

[11] *Stone v. First Union Corp.,* 371 F.3d 1305, 1312 (11th Circ. 2004) (potential *stare decisis* effect of pending case might be given preclusive effect in later suit by intervention; this justifies intervention as of right); *Surtan, supra.*

The existing plaintiffs, although sharing the same legal claim with Plaintiff-Intervenors, do not adequately represent the Plaintiff-Intervenors, as the discussion above shows. Existing plaintiffs have a commitment to a grossly inadequate settlement, one which prescribes a one-size fits all WorldCo-made vehicle for all class members, regardless of their individual circumstances. Existing plaintiffs do not share either a preference or a need for the use of Segways at Disney parks, despite the allegations in their seriatim complaints.[12]  The Plaintiff-Intervenors have provided a detailed analysis in their Objections which identify interests which are not adequately represented.[13]  The wide opposition to the current representation is evident on the docket of the Court.

In contrast to the plaintiffs in the main case, the Plaintiff-Intervenors have a vital and live dispute with WorldCo over Walt Disney World's policy and have the desire and ability to litigate the dispute or resolve it appropriately in some other fashion.

### B. Plaintiff-Intervenors Have a Profound Interest in the Subject of the Action

Rule 24(a)(2) requires that intervenors "claim an interest relating to the property or transaction that is the subject of the action." Plaintiff-Intervenors have a profound interest in this litigation. The interest test is a practical one, and is interpreted to include those who would be substantially affected by the main action's result. *Coalition of Arizona/New Mexico*

---

[12]  In contrast to the very personal and direct interest of the intervenors here, where a proposed intervenor has simply a "generalized right" shared with the whole community, intervention will not be granted. *See Athens Lumber Co., Inc. v. Federal Election Commission,* 690 F.2d 1364 (11th Cir. 1982) (a union's general concern for disproportionate corporate election contributions does not support intervention in suit by a corporation against the election commission).

[13]  *E.g., Georgia v. Ashcroft*, 539 U.S. 461 (2003) (no abuse of discretion to permit intervention where district court granted motion to intervene because ""analysis of the ... Senate redistricting pla[n] identifies interests that are not adequately represented by the existing parties.").

*Counties for Stable Economic Growth v. Dept. of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) (characterizing interest test as "'a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process'") (quoting *Neusse v. Ca*mp, 385 F.2d 694, 700 (D.C. Cir. 1967)); Fed. R. Civ. P. 24 advisory committee note (1966 Amendments) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene[.]").

There can be no doubt that this element of the rule is met here. The Plaintiff-Intervenors who live in Florida would be personally affected; Major Gade, for example, has already been barred from entry with his Segway into Walt Disney World. DRAFT's Seg4Vets program, which has donated hundreds of Segways to veterans, will be affected, as will the organization's entire educational and advocacy program.

### C. Plaintiff-Intervenors' Ability to Protect Their Interests Will Be Impaired.

Rule 24(a)(2) intervention of right is appropriate here because, quite plainly and in the rule's terms, disposing of the action <u>may</u> as a practical matter impair or impede the movant's ability to protect its interest…." (emphasis added). The practical disadvantage required by this aspect of the rule is supplied by the potential stare decisis effect when a party seeking intervention claims an interest in the very property and very transaction that is the subject of the main action. *Chiles v. Thornburgh,* 865 F.2d 1197 (11th Cir. 1989) (detainees in federal facility have right to intervene in Senator's suit against United States official); *Accord, United States v. Oregon*, 839 F.2d 635 (9th Cir. 1988) (residents of state mental health facility

were entitled to intervene of right in United States' action on facility conditions; factual determinations would have persuasive stare decisis effect, and relief afforded to the United States might dissipate resources otherwise available to the residents).

As is the case in all injunction actions under Rule 23(b)(2), where the no opt-out mechanism binds all class members, Plaintiff-Intervenors would be unable to protect their interests if the main action proceeds, despite the fact that they are inadequately represented in that action.

Certainty of impairment is not required. In this case, however, it is certain that the answer to the question of whether Disney's policy violates the ADA will be binding on Plaintiff-Intervenors. This is precisely an impairment which, under the rule, supports intervention.


## IV.    Permissive Intervention

Under Rule 24(b)(2), permissive intervention may be granted where the intervenor's claim or defense and the original action share a common question of law or fact. Courts are amenable to intervention where no new issues are added to a case,[14] where the intervenor's claims are virtually identical to the class claims,[15] and to bolster adequacy of representation.[16] When class representatives are not adequate, as here, there is a special interest in permitting intervention to advance the issues in the case.[17]

---

[14]  *O'Neil v. Marriott Corp.,* 34 Fed. R. Serv 2d 293 (4th Cir. 1982).

[15]   *Hill v. Sullivan*, 125 F.R.D. 86 (S.D.N.Y. 1989) (challenge to an ALJ's reliance on same policies and procedures);

[16]  *Rutstein v. Avis Rent-A-Car Systems, Inc*., 211 F.3d 1228 (11th Cir. 2000) (noting that district court allowed intervention "because Rutstein was plainly inadequate as a class representative, intervention by ZAI would

Here, the legal claim is identical in the main action and in the Plaintiff-Intervenors' action, namely, the legality under the ADA, as amended, of the Defendant's ban on two-wheeled mobility devices, without regard to individual circumstances. The issue is briefed in detail in the DRAFT Objectors' submission and in the brief of the United States in opposition to the pending settlement. Factual questions regarding mobility needs, the Segway itself, and Disney's practices and policy implementation are also common to both the main and intervention cases.

Should the Court deny intervention of right, then permissive intervention is certainly appropriate.

## V.       The Motion to Intervene Is Timely

Intervention under either section of Rule 24 must be timely. Timeliness is flexible notion and, as shown below, intervention on the eve of settlement is permitted.[18]  Here, intervention, we submit, should be granted whether the Court approves or disapproves the pending settlement. If the Court disapproves it, the Plaintiff-Intervenors will litigate the issues together with any remaining original plaintiffs who have standing. If the Court approves the settlement, the Plaintiff-Intervenors will be in a position to request

---

'strengthen the adequacy of class representation.' ");  *Sanders v. John Nuveen & Co., Inc.,* 463 F.2d 1075 (7th Cir. 1972), *cert. den.*, 409 U.S. 1009 (1972); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359 (D.Del. 1990).

[17]   *Richardson v. Hamilton International Corp.*, 62 F.R.D. 413 (E.D. Pa. 1974) (named plaintiff was disqualified, so intervention was granted, substituting the intervenor for the named plaintiff as the champion of the class action); *Rothman v. Gould*, 52 F.R.D. 494 (S.D.N.Y. 1971); securities case where plaintiff "blew hot and cold" and there was no knowledgeable and truly vigorous representation, court ordered notice for purpose of affording interested parties to seek intervention).

[18]  *Georgia v U.S. Army Corps of Engineers*, 302 F.3d 1242 (11th Cir. 2002).

reconsideration, if appropriate, to participate in an appeal, and to monitor and enforce compliance.

There is no timeliness concern in the case at bar. The absentee class members reasonably relied on the plaintiff class representatives to litigate the case as they presented it: to end the Disney ban on Segways.  Even as late as the <u>day before the settlement was filed in this Court, two of plaintiff's counsel had not seen it and did not know the status of the settlement discussions.</u>[19] The abandonment of plaintiffs' claim, along with the extraordinary waiver of all state law claims for the absent national class, was negotiated secretly.

Plaintiff-Intervenors, along with dozens of other individuals, learned that they were inadequately represented only when the parties in the main action just weeks ago revealed their Settlement Agreement and Release when the Class Notice was issued at the order of the Court. Before that point in time, the absent class members relied, and were entitled to rely, on the main case's plaintiffs to vigorously pursue the litigation on behalf of the class and to maintain, but not surrender, the class' rights under the ADA and to other claims. Some discovery on class certification has taken place, but no extensive merits discovery has occurred (or minimal, if any), no trial has been set, and no summary judgment or other dispositive motions have been litigated, subsequent to the motion to dismiss. The motion was timely.[20]

---

[19]  <u>See</u> Affidavit of [Plaintiffs' counsel] Bernard Dempsey, and attached exhibits, cited and discussed at note 1 *supra*.

[20]  *Chiles v. Thornburgh*, 865 F.2d 1197, 1213  (11th Cir. 1989) (detainees in federal facility have right to intervene in Senator's suit against United States official) ("We believe that the detainees' motion to intervene was timely. It was filed only seven months after Senator Chiles filed his original complaint, three months after the government filed its motion to dismiss, and before any discovery had begun. None of the parties already in the lawsuit could have been prejudiced by the detainees' intervention. *Cf. Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1125-26 (5th Cir.) (motion to intervene more than a year after the action was commenced was timely

Obviously, filing the Objections by the March 12 deadline was the highest priority, once DRAFT's original counsel obtained the assistance of other counsel, including local counsel. That done, attention could turn to considering and researching intervention. Given all the circumstances, this motion and the attached complaint have been filed with extraordinary speed.

The parties will not be prejudiced or delayed by this intervention.  At the settlement hearing,[21] the Plaintiff-Intervenors' presentation will overlap that of the Objectors. If the settlement is disapproved, then (with or without intervention) the parties are back to the drawing board and to litigating the merits of the original claim.

The fact that Plaintiff-Intervenors would be unwilling to settle on the same terms as the main action's plaintiffs is no reason to deny intervention.[22]  In fact, an accepted reason to grant intervention is to permit parties with a different point of view to be at the table in negotiations. *Buchet v. ITT Consumer Financial Corp.*, 845 F.Supp. 684 (D. Minn. 1994) (intervention motion filed on eve of settlement approval proceedings allowed as timely; intervenor permitted to participate in settlement negotiations, against argument that intervenor would be obdurate in negotiations); *Alaniz v. California Processors, Inc.*, 73

---

when there had been no legally significant proceedings other than the completion of discovery and motion would not cause any delay in the process of the overall litigation), *cert. denied*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970)").

[21]   We note that the Objectors and the United States have shown that, as a matter of law, the settlement agreement must be rejected. Therefore, it may be that, upon its review, the Court will determine that a hearing is not necessary for it to disapprove the settlement.

[22]   *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 999 (8th Cir. 1993) ("Prejudice that results from the mere fact that a proposed intervenor opposes one's position and may be unwilling to settle always exists when a party with an adverse interest seeks intervention. Any prejudice to the Band's ability to settle results not from the fact of the landowners' delay in seeking intervention, but rather from the landowners' presence in the suit. Rule 24(a) protects precisely this ability to intervene in litigation to protect one's interests.").

F.R.D. 269 (N.D. Cal. 1976), modified, 73 F.R.D. 289 (N.D. Cal. 1976), aff'd, 572 F.2d 657 (9th Cir. 1978) (intervention allowed to permit intervenors to participate in settlement negotiations).[23]

As the Eleventh Circuit recognizes, an existing party's "greater willingness to compromise," as compared to the intervenors, can support grant of intervention.[24]

> Finally, the suggestion of settlement at the hearing shows yet another divergence of interests. The plaintiffs have asserted, and the proposed interveners have not denied, that the proposed interveners are adverse to settlement. That being the case, the proposed interveners intend to pursue their favored result with greater zeal than the county commissioners. A greater willingness to compromise can impede a party from adequately representing the interests of a nonparty.

*Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999).

Plaintiff-Intervenors' attorneys, who were drawn together by this conflict, moved quickly upon learning of the settlement to assimilate the pleadings that preceded the settlement, coordinate communication with the diverse national population of  interested individuals and organizations, and assemble and file over a hundred declarations. At the same time, they extensively researched and drafted detailed objections to the settlement along with several motions related to the settlement. Having submitted those objections,

---

[23]   Intervenors here would not be repetitive of the positions of plaintiffs in the main action. *See Standard Heating and Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567 (8th Cir. 1998) (intervention to participate in settlement negotiations denied where proposed intervenor organizations shared same interests as City which was a party already at the negotiation table, and the intervenors positions would be repetitive).

[24]   *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999):

> Finally, the suggestion of settlement at the hearing shows yet another divergence of interests. The plaintiffs have asserted, and the proposed interveners have not denied, that the proposed interveners are adverse to settlement. That being the case, the proposed interveners intend to pursue their favored result with greater zeal than the county commissioners. A greater willingness to compromise can impede a party from adequately representing the interests of a nonparty.

Plaintiff-Intervenors have again moved as quickly as possible to file this intervention request, less than a month after the objections were due.

### CONCLUSION

There are important benefits to intervention for the plaintiff class and for the administration of justice. Intervention will permit a full and informed presentation of the issues before the Court, so that a decision on the merits will be well grounded, regardless of which party prevails.  Intervention will ensure that the preclusive effect of a judgment in this class action does not inure to the detriment of absent class members. Whether the case is ultimately tried, settled or decided on appeal, intervention will permit the common claim – that the Disney ban violates the ADA – to be addressed comprehensively and with finality.[25]

**WHEREFORE, ALL PREMISES CONSIDERED**, Plaintiff-Intervenors Disability Rights Advocates for Technology (DRAFT), Daniel Gade, Jerry Miller, Alan Maccini and James Overby, respectfully move this Honorable Court to grant intervention of right under Rule 24(a) and, in the alternative, permissive intervention, under Rule 24(b) of the Federal Rules of Civil Procedure. Plaintiff-Intervenors further request that their Complaint in Intervention be deemed filed and that Defendant Walt Disney World Co. be required to respond to the complaint within twenty (20) days.

---

[25]  If the settlement is disapproved, and intervention granted, then the Court in later proceedings will address the familiar task of appointment of class counsel.

## LOCAL RULE 3.01(G) CERTIFICATION

The undersigned certify that, with respect to the foregoing motion, they have conferred with counsel for Plaintiff Mahala Ault who consents to the relief sought herein and with counsel for Plaintiffs Dan Wallace and Stacie Rhea and Defendant Walt Disney World Co. who oppose the relief sought herein.

s/Aaron C. Bates_____
Attorneys for Plaintiffs

**COUNSEL:**

Aaron C. Bates
BATES MOKWA, PLLC
126 East Jefferson Street
Orlando, Florida 32801
Telephone: (407) 893-3776
Facsimile: (407) 893-3779
abates@batesmokwa.com

David G. Geffen
David Geffen Law Firm
530 Wilshire Blvd Suite 205
Santa Monica, CA 90401
Telephone: (310) 434-1111
Facsimile: (310)-434-1115
geffenlaw@aol.com

David Ferleger
10 Presidential Boulevard
Suite 115
Bala Cynwyd, PA 19004
Telephone: (610) 668-2221
Facsimile: (610) 668-3889
david@ferleger.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 2, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties named on the attached Service List or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

s/ Aaron C. Bates
Aaron C. Bates

**SERVICE LIST**

John A. Baker
J. Phillip Krajewski
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, IL 62701
Telephone: (217) 522-3445
Facsimile: (217) 522-8234
johnbakerlaw@sbcglobal.net
jpklaw@sbcglobal.net
**Attorneys for Dan Wallace**

Bernard H. Dempsey, Jr.
Dempsey & Associates, PA
1560 Orange Ave., Suite 200
Winter Park, FL 32789-5544
Telephone: (407) 422-5166
Facsimile: (407) 422-8556
bhd@dempsey-law.com

Nancy A. Johnson
McGuire Woods, LLP
Suite 3300
50 N Laura St
Jacksonville, FL 32202
Telephone: (904) 798-3234
Facsimile: (904) 360-6307
njohnson@mcguirewoods.com
**Attorneys Mahala Ault**

Gretchen E. Jacobs
U.S. Department of Justice
P.O. Box 66738
Washington, D.C. 20035-66738
Telephone: (202) 514-9584
Facsimile: (202) 307-1198
gretchen.jacobs@usdoj.gov
**Attorney for *Amicus Curiae***
**United States of America**

Jason M. Medley
O'Donnell, Ferebee, Medley & Keiser, PC
450 Gears Rd, Suite 800
Houston, TX 77067
Telephone: (281) 875-8200
Facsimile: (281) 875-4962
jmedley@ofmklaw.com
**Attorneys for Stacie Rhea**

Manuel Kushner
Kaye Scholer, LLP
Suite 900 W
777 S Flagler Dr
West Palm Beach, FL 33401
Telephone: 561/802-3230
Facsimile: 561/802-3217 (fax)
mkushner@kayescholer.com

Kerry Alan Scanlon
Jeremy M. White
Kaye Scholer, LLP
901 15th St NW, Suite 1100
Washington, DC 20005
Telephone: 202/682-3500
Facsimile: 202/682-3580
kscanlon@kayescholer.com
jewhite@kayescholer.com
**Attorneys for Defendants Walt Disney**
**World Co.**