**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MAHALA AULT, STACIE RHEA and**
**DAN WALLACE,**

           **Plaintiff,**

-vs-                                            **Case No. 6:07-cv-1785-Orl-31KRS**

**WALT DISNEY WORLD CO.,**

           **Defendant.**
_____/

## ORDER APPROVING CLASS ACTION SETTLEMENT

**I. Introduction**[1]

On November 9, 2007, Plaintiffs brought this class action alleging that Defendant's, Walt Disney World Company ("Disney"), policy against Segways violates Title III of the Americans with Disabilities Act.[2] On December 5, 2008, the named parties submitted a proposed settlement to the Court. (Doc. 79.) On January 5, 2009, the Court conditionally certified a settlement-only class pursuant to FED. R. CIV. P. 23(b)(2) and granted preliminary approval to the settlement subject to objections and a fairness hearing. (Doc. 83.)

---

[1] The Court's Orders of January 5, 2009, and October 6, 2009, set out in detail the facts underlying this dispute. (*See* Docs. 83 and 228.)

[2] *See generally* 42 U.S.C. §§ 12181 to 12189 (the "ADA"). Specifically, Plaintiffs alleged that Defendant's policy violates 42 U.S.C. § 12182(b)(2)(A)(ii).

The Court conducted an extensive two-day fairness hearing beginning on June 3, 2009. (Docs. 208 and 209.) Subsequent to the fairness hearing, the Court permitted the parties, objectors and *amici* to file post-hearing briefs. (*See* Docs. 217 – 221 and 227.)

After reviewing and considering the relevant submissions, considering the objections, and hearing arguments of counsel at the fairness hearing, this Court concluded that the named Plaintiffs lacked prudential standing and dismissed the Second Amended Complaint without prejudice. (Doc. 228.) On appeal, the Eleventh Circuit determined that the district court erred in concluding that the named plaintiffs lacked prudential standing. (Doc. 247.) The Eleventh Circuit remanded for this Court to consider, *inter alia*, "whether the claims of the named [P]laintiffs are typical of the claims of the class and whether they are adequate representatives of the class." (*Id*. at 3.)

Following remand, the Court held a status conference. (Doc. 244.) Subsequent to the status conference, the Court permitted the objectors and *amici* to file post-remand supplemental briefs, and the parties were permitted to file responsive memoranda. (*See* Docs. 241, 246, 248 and 249.)[3]

The Court must now consider (1) whether to grant final class certification and (2) whether to grant final approval to the parties' settlement. For the reasons set forth below, the Court answers each question in the affirmative.

---

[3] Two post-remand briefs have been submitted by objector Disability Rights Advocates for Technology ("DRAFT") and *amicus curiae* the U.S. Department of Justice (the "DOJ").

**II. Analysis**

**A. Class Certification**

This Court has previously had one occasion to address in depth the propriety of class certification. Specifically, in its preliminary approval order, the Court determined that the putative class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). (Doc. 83 at 5-9.) Additionally, the Court found that Plaintiffs satisfied the requirements of Rule 23(b)(2). (*Id.* at 9.)

Having fully considered the arguments raised by the DOJ and DRAFT in their respective post-remand briefs, the Court sees no reason to depart from its prior rulings regarding class certification. Both the DOJ and DRAFT argue that the Plaintiffs' claims lack typicality under Rule 23(a) because they rely on Segways to a different extent then other class members. However, any differences in the class members' degree of reliance has little or no relevance to the claims presented by the named Plaintiffs, which are identical to the claims of every class member. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000). "Every class member – whether absent from the proceedings or acting as a class representative – is asserting that Disney's prohibition on Segways precludes them from the full use and enjoyment of the Parks." (Doc. 83 at 8.) Such similarity of legal theories shared by the Plaintiffs and the class at large dictates a determination that the named Plaintiffs' claims are typical of those of the members of the putative class. For the same reasons, the differences in the class members' degree of reliance on the Segway does not affect the Court's prior conclusion that Plaintiffs will fairly and adequately protect the interests of the class.

In addition, the Court rejects DRAFT's argument that the numerosity requirement has not been met in this case. Although mere allegations are insufficient to meet the numerosity prerequisite for class certification, it is well established that a plaintiff need not be able to prove the exact number of members or identify each class member. *See Vega v. T-Mobile USA*, *Inc*., 564 F.3d 1256, 1267 (11th Cir. 2009); *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). As noted in the preliminary approval order, Plaintiffs have been able to specifically identify twenty-five actual class members. (*See* Doc. 66-2.) Since that time, DRAFT itself has identified "nearly 100 individuals" as class members who object to the proposed settlement. (Doc. 241 at 1.) Based on these figures, the Court reaffirms its prior ruling that there are enough persons (25+) to satisfy the impracticality of joinder requirement of Rule 23(a).

Since the settlement class satisfies both Rule 23(a) and 23(b)(2), the Court will grant final class action certification.[4]

**B. Fairness of the Settlement Agreement**

In addition, the Court reaffirms its prior findings regarding the substantive fairness of the settlement agreement. (*See* Doc. 83 at 9-12.) Notably, in its analysis of the relevant factors

---

[4] The Court also rejects DRAFT's argument that Plaintiffs lack Article III standing due to their "once-in-a-while Segway use." (Doc. 241 at 3); (*see also* Doc. 217 at 18). This case is distinguishable from *Access for the Disabled, Inc. v. Osceola Enterprises of Kissimmee, Inc.,* No. 6:09-cv-1805-Orl-31GJK, 2010 WL 2889823 (M.D. Fla. July 22, 1010), on which DRAFT relies. In that case, this Court denied plaintiffs' motion for default judgment on their ADA complaint due to their failure to adequately allege that there were disabled and that the architectural barriers they challenged reasonably related to their disability. Here, in contrast, Plaintiffs have standing to challenge Disney's policy prohibiting Segways as such policy specifically relates to their mobility disability.

delineated in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), the Court found that Plaintiffs' likelihood of success at trial is questionable given the fact that "the Court could easily conclude that Plaintiffs simply prefer the Segway to other types of mobility devices and that such a preference, as a matter of law, need not be accommodated under the ADA." (Doc. 83 at 10.)

In its post-remand brief, the DOJ argues that the Court should reconsider its prior findings regarding Plaintiffs' likelihood of success at trial in light of (1) the DOJ's recently revised Title III regulations addressing mobility devices; and (2) a broader reading of the term "necessary" in 42 U.S.C. § 12182(b)(2)(A)(ii)'s reasonable modification requirement. The Court addresses each argument in turn.

Title 28, Code of Federal Regulations, Section 36.311(b)(1), provides in full:

> A public accommodation shall make reasonable modifications in its policies, practices, or procedures to permit the use of other power-driven mobility devices [("OPDMD")][5] by individuals with mobility disabilities, unless the public accommodation can demonstrate that the class of other power-driven mobility devices cannot be operated in accordance with legitimate safety requirements that the public accommodation has adopted pursuant to § 36.301(b).

---

[5] An OPDMD is defined as:

> any mobility device powered by batteries, fuel, or other engines – whether or not designed primarily for use by individuals with mobility disabilities – that is used by individuals with mobility disabilities for the purpose of locomotion, including golf cars, electronic personal assistance mobility devices (EPAMDs), such as the Segway . . . , or any mobility device designed to operate in areas without defined pedestrian routes, but that is not a wheelchair within the meaning of this section.

28 C.F.R. § 36.104.

28 C.F.R. § 36.311(b)(1). In determining whether an OPDMD should be allowed in a specific facility as a reasonable modification under (b)(1), a public accommodation shall consider the following factors:

> (i) The type, size, weight, dimensions, and speed of the device;
>
> (ii) The facility's volume of pedestrian traffic (which may vary at different times of the day, week, month, or year);
>
> (iii) The facility's design and operational characteristics (e.g., whether its business is conducted indoors, its square footage, the density and placement of stationary devices, and the availability of storage for the device, if requested by the user);
>
> (iv) Whether legitimate safety requirements can be established to permit the safe operation of the other power-driven mobility device in the specific facility; and
>
> (v) Whether the use of the other power-driven mobility device creates a substantial risk of serious harm to the immediate environment or natural or cultural resources, or poses a conflict with Federal land management laws and regulations.

28 C.F.R. § 36.311(b)(2). As explained in the preamble, "the focus of the analysis [under § 36.311(b)(2)] must be on the appropriateness of the use of the device at a specific facility, *rather than whether it is necessary for an individual to use a particular device*." 75 Fed. Reg. at 56, 236 (emphasis added).

According to the DOJ, these new regulations are a "game changer" as § 36.311(b) expressly provides legal recognition of, and protection for, use of Segways and other mobility devices at public accommodations subject to legitimate safety concerns. (Doc. 246 at 10.) The DOJ claims that the revised regulations "significantly enhance" the class members' Title III claims

and "strongly counsel against final judicial approval of the proposed class settlement agreement." (*Id*. at 11.)

In response, Disney argues that the DOJ's revised regulation is contrary to the plain language of Title III and, therefore, not entitled to any deference. This Court agrees. As Disney correctly notes, under *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc*., 467 U.S. 837, 844 (1984), an agency's construction of a statute controls unless the construction is arbitrary, capricious, or manifestly contrary to the statute. Here, the DOJ's revised regulations conflict with the plain language of Title III, which requires that a requested modification be necessary for a disabled individual to be afforded goods or services. *See* 42 U.S.C. § 12182(b)(2)(A)(ii).[6] Therefore, to the extent the revised regulation is inconsistent with the statutory text of Title III, the Court declines to accept it. *See McComb v. Wambaugh*, 934 F.2d 474, 481 (3d Cir. 1991) ("[I]n any conflict between a statute and a regulation purporting to implement the statutes provision, the regulation must, of course, give way.").

---

[6]

| **Title III, 42 U.S.C. § 12182(b)(2)(A)(ii)** (emphasis added) | **Revised Regulation, 28 C.F.R. § 36.311(b)(1)** |
|---|---|
| "[D]iscrimination includes . . . a failure to make reasonable modifications in policies, practices, or procedures, *when such modifications are necessary* to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." | "A public accommodation shall make reasonable modifications in its policies, practices, or procedures to permit the use of other power-driven mobility devices by individuals with mobility disabilities, unless the public accommodation can demonstrate that the class of other power-driven mobility devices cannot be operated in accordance with legitimate safety requirements that the public accommodation has adopted pursuant to § 36.301(b)." |

Even if the Court were to accord *Chevron* deference to the revised regulation, Disney would likely be able to maintain its ban on Segways in light of its legitimate safety concerns. Specifically, the evidence at the fairness hearing supports Disney's position that unrestricted Segway use poses significant safety risks because Segways cannot be operated in accordance with Disney's legitimate safety requirements. *See* 28 C.F.R. § 36.301(b).[7] Disney's position, therefore, presents a significant hurdle to any potential recovery by the Plaintiffs.

The DOJ argues that under its interpretation of the term "necessary" in § 12182(b)(2)(A)(ii), which it claims is entitled to deference from this Court, a plaintiff must "demonstrate only that they 'need' a particular mobility device (such as a Segway) to aid them in relation to, or help ameliorate the effects of, their mobility impairment." (Doc. 246 at 5.) The DOJ, however, cites no case law directly on point for this broad interpretation of the statute. Further, this interpretation ignores both the plain language of the statute and federal case law. *See Baughman v. Walt Disney World Co.*, 691 F. Supp. 2d 1092, 1095 (C.D. Cal. 2010) ("For a requested modification to be necessary, a plaintiff must show that she would be effectively excluded from the public modification without the modification.") (citing *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004)).[8] The DOJ's interpretation of

---

[7] At the fairness hearing and in his deposition, Greg Hale, Disney's Chief Safety Officer, testified in detail about his thorough review and assessment of whether the Segway could be used by guests at Disney's theme parks and his conclusion that the safety risks posed to other guests in the unique environment of the parks were simply too great. (*See* Hale Dep. Doc. 249-1 at 170-175.)

[8] Further, in *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001), it was undisputed that provision of a golf cart was "reasonable" and was "necessary" to afford the disabled plaintiff – who was unable to walk a golf course – access to defendant's golf tournaments. *Id.* at 682. This is different, the Supreme Court explained, from a claim "that might be asserted by players with less serious afflictions that make walking the course uncomfortable or difficult, but not beyond their capacity. In such cases, an accommodation might be reasonable but not necessary." *Id.*

the term "necessary" in § 12182(b)(2)(A)(ii) is unreasonable and, therefore, not entitled to deference by this Court.

Having considered the arguments raised by DRAFT and the DOJ, the Court finds that the first *Bennett* factor still weighs strongly in favor of final approval of the settlement.

It does not appear that either the DOJ or DRAFT object to the Court's prior conclusion that each of the five remaining *Bennett* factors also weigh in favor of approving the Settlement Agreement. In any event, the Court has reviewed those factors again and adopts its prior analysis. The Court reiterates its previous finding that the Settlement Agreement is fair, adequate, and reasonable, and is not the product of collusion between the parties.

### III. Conclusion

In light of the foregoing analysis, and for the reasons set forth in the preliminary approval order, it is hereby ORDERED that:

1. The Court GRANTS final class certification and final approval of the proposed Settlement;

2. All objections to the Settlement are OVERRULED;

3. Pursuant to Paragraph 18 of the proposed Settlement, the parties shall submit a proposed Final Judgment consistent with this Order on or before Friday, April 22, 2011. After reviewing the proposed Final Judgment, the Court will enter an Order setting a date sixty (60) days thereafter for a hearing on any unresolved attorneys' fees issues.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on April 4, 2011.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party